J2WATKINS, Judge.
On June 25, 1991, Herman Hebert filed a rule to show cause why a 1988 judgment in his favor should not be enforced against the State of Louisiana, Department of Wildlife and Fisheries (Department). The trial court ruled in Mr. Hebert’s favor, holding the Department in contempt for violating a consent judgment, and awarding damages to Mr. Hebert. The trial court provided written reasons for judgment which we attach hereto as an appendix. The Department appealed, urging that the trial court erred in interpreting the compromise that formed the basis of the consent judgment of 1988 and in finding that the Department had breached that agreement. The Department also challenges the amount of the court’s damage award.
The Supreme Court of Louisiana developed a two part test for reviewing factual issues on appeal in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). According to the test, appellate courts may not disturb the factual findings of a trier of fact if:
1) The appellate court ... findfs] from the record that there is a reasonable factual basis for the finding of the trial court, and
2) The appellate court ... determine^] that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
The Louisiana Supreme Court has promulgated general principles for appellate courts to follow when determining whether factual findings are “clearly wrong”. One general principle concerns the trial court’s choice between two permissible views of the evidence. When conflicting evidence creates two possible views of the evidence and the trier of fact’s choice between the views is reasonable in light of the entire record, an appellate court may not reverse merely because it would have chosen the alternative view. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Lirette v. State Farm Insurance Company, 563 So.2d 850, 855 (La.1990); Stobart, 617 So.2d at 883.
After a thorough review of the record in the present case, it is clear that two permissible views of the evidence existed. According to the general principle cited herein, we cannot reverse the trial court’s reasonable choice between the two views. Therefore, we affirm the trial court’s factual findings that: (1) the Department failed to comply with the terms of the compromise and consent judgment of November 16, 1988; (2) that the issues presented by the contempt rule required the court to determine the intent of the parties to the consent judgment; and (3) that the intent was for the plaintiff to be granted a permit for collection of hatchlings for up to 10 years, which could not be changed unilaterally by the Department subsequent to the consent degree. The Department’s assignments of error challenging the above factual determinations are without merit.
The Department also urges that the trial court failed to address or determine whether the plaintiff mitigated his damages. The crux of the Department’s argument on this assignment of error is that, once it became evident to Mr. Hebert that the Department was not going to issue a permit for the collection of hatchlings, he should have converted his operation and started collecting eggs. This argument is clearly without merit, as the entire thrust of Mr. Hebert’s claim *25 for damages was that the Department breached its agreement to allow him to collect hatchlings for a period of 10 years. The Department cannot relegate Mr. Hebert to the alternative production method of egg collection by the mitigation of damages theory or any other legal principle.
Finally, the Department argues that the trial court’s measure of damages was erroneous. Although we do not agree with all of the Department’s calculations, we find that the trial court overlooked two items that will require adjustment of the court’s calculation of damages.
UFirst, we note that there was no error in the trial court’s use of figures from the Department’s “1990 Economic Impact” instead of the figures set out in the trial testimony of Larry McNease. The authors of the “1990 Economic Impact” explain: “The information collected in this study can serve as a benchmark of the economic impact of the [alligator] industry from which the future can be measured.”
One item the trial court should have included from the “1990 Economic Impact” is the average mortality rate of 2.87 percent for alligators on small farms. This percentage translates into an operating expense of $8.86 more per alligator than the expense calculated by the trial court. Thus, the net profit per alligator would be $68.70 instead of the amount of $72.56 used by the trial court. This increase in expenses would result in a yearly net profit of $41,220.00 instead of $43,-536.00.
Furthermore, the Department contends on appeal that the trial court erred in awarding damages for nine years. The Department claims the plaintiff could have been made whole by ordering the Department to issue a “hatchling only” permit for the remaining years of the 10-year term established by the compromise agreement. We agree. Accordingly, we will order the Department to issue a “hatchling only” permit for three and a half years from the date of this opinion, and we will recalculate plaintiffs damages using a five and a half year period instead of the nine year period used by the trial court.
The remaining Department challenges to the trial court’s assessment of damages are without merit. We especially note that there is ample evidence in the record to support the trial court’s finding that 60 percent was a reasonable average of what the plaintiff would have been able to collect of his 1,000 alligator allotment.
|5Having found it necessary to amend the judgment, we will cast both parties with fifty percent of the costs of this appeal. The Department and Mr. Hebert are to pay $111.00 each in costs.
Accordingly, the judgment of the trial court is amended, in part, as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendant, the State of Louisiana, Department of Wildlife and Fisheries, issue to plaintiff, Herman Hebert, an alligator “hatchlings only” permit viable for three and a half years subsequent to this judgment.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, the State of Louisiana, Department of Wildlife and Fisheries, is hereby condemned to pay the plaintiff Herman Hebert the total sum of TWO HUNDRED TWENTY-SIX THOUSAND SEVEN HUNDRED TEN and NO/100 ($226,710.00) DOLLARS representing damages sustained by its failure to abide by the contemplated provisions of the consent judgment of November 16, 1988.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
| (APPENDIX
STATE OF LOUISIANA PARISH OF IBERVILLE 18TH JUDICIAL DISTRICT COURT
NO. 35,434
HERMAN HEBERT VERSUS STATE OF LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES, ET AL
REASONS FOR JUDGMENT
This case comes before the court with a lengthy and disturbing history. A view of *26 the entire record can only lead one to believe the plaintiff, Herman Hebert, has been the victim of incessant harassment and intentional disregard of his contractual rights acquired through a consent judgment by the department of Wildlife and Fisheries (DFW).
In April of 1987 Herman Hebert was issued his original permit by the DFW, authorizing him “to remove” 1,000 “hatchlings from the swamp habitat”. (This was actually two identical permits, one for 900 hatchl-ings and the other for 100 hatchlings, covering different acreages). Later that year Mr. Hebert was arrested and charged with allegedly catching illegal size alligators. He was subsequently found not guilty at trial and requested his permits and seized alligators returned. (It is important to understand that the arrest and seizure was a result of a vague definition of “hatchlings” which was later changed by the DWF as a direct result of this case to be an alligator 23 inches or less. This fact was confirmed by Noel Kin-ler, Project Coordinator for the Fur and Refuge Division of DWF, Tr. p. 1⅛6) The DWF refused and Mr. Hebert filed suit in this matter alleging damages for false arrest, liable, slander, malicious prosecution and for illegal revocation of his farming permits.
After lengthy negotiations, the parties agreed to compromise and settle their dispute. The correspondence between counsel at the time unequivocally indicates the intent of the parties in the compromise offer and acceptance, including the right of Mr. Hebert to catch “hatchlings” alligators in the future. Plaintiffs offer of September 16,1988 specifically corroborates his desire for hatchling alligators, (Plaintiff Exhibit I). Defendant’s counter offer of October 26, 1988 specifically offers “Reinstatement of Mr. Hebert’s permit with the understanding that he would only be hallowed to catch hatchlings as defined by the department in the future. (Plaintiff Exhibit J; Defendant Exhibit 9) The words “as defined” could have only one interpretation and understanding by the parties at the time, considering the history of the dispute. This term obviously was referring to the definition of hatchlings being 23 inches or less. Mr. Hebert, through his attorney, accepted the counter offer in writing and as far as this court is concerned the deal was made and the parties intent was obvious.
Mr. Hebert originally had the right to catch up to 1,000 hatchling alligators per year. He was offered to have his permit reinstated to catch hatchling alligators again, so long as they met the defined size limit. He accepted and this was his understanding, as any reasonable prudent mind could be expected to understand. The offer and acceptance was ultimately confected by the Joint Petition of Compromise filed herein and considered a final judgment of this court. His permits were reissued and he was again allowed to catch up to 1,000 hatchlings per year. The permit was for an initial 5 year term with a renewal option for an additional 5 year term.
On September 18, 1989, Herman Hebert was informed by DWF that new hatchling permits would not be issued “but existing permits would be honored until they expired” (Plaintiff Exhibit O). However, on March 7, 1990, DWF informed Mr. Hebert that his hatchling permits were being converted to egg collection permits (Plaintiff Exhibit P). Mr. Hebert objected to this change and filed this action for contempt and damages for the DWF’s failure to abide by the terms of their agreement and consent judgment.
The DWF excepted to venue in this court and the proceedings were delayed until the First Circuit Court of Appeal remanded the matter back to this court for a finding on the merits as to “whether the current action qualifies as a portion of the previous action”. It is the finding of this court that this action unquestionably involves interpretation of the previous agreements of the parties and is in fact a continuation of the previous action herein. This matter was finally tried on August 24, 1993. There were only three questions that had to be addressed in this matter. (1) What was the agreement of the parties? (2) Did the DWF comply Igwith the agreement? (3) What were Mr. Hebert’s damages if there was a breach?
The court, as a matter of fact, finds that the intent of the parties in the compromise *27 agreement was to allow Herman Hebert the right to catch up to 1,000 hatchling alligators per year during the 10 year term of his permit. The facts as set forth by the plaintiff were corroborated by the evidence and testimony. The reality of this fact was finally admitted by James Manning, Assistant Administrator, Fur and Refuge Division of DWF, at the courts own questioning;
A Do you want me to tell you the truth how I feel—

Q. Go ahead

A. —About what I’ve heard today?

Q. That’s what I’ve been wanting to hear all day is truth.

A. Okay, okay. I think Mr. Hebert really thought he got hatchlings for ten years. Okay. That’s what I believe about Mr. Hebert.

JAMES MANNING, Tr. p. m

The credibility of the DWF is further eroded by the testimony of Michael Landrum, the attorney who negotiated the compromise, who attempted to convince the court that there had not been any consideration of additional damages to Mr. Hebert in their negotiations, Tr. p. 255. However, his memory became confused when confronted by his own handwritten notes to the contrary, Tr. p. 263, (Plaintiff Exhibit Y). Finally at the questioning of his own attorney, Mr. Landrum had to admit he did indeed agree to give Mr. Hebert additional compensation.
A It appears in the end that he was. That was not what I set out to do. That was not what I was trying to testify to. But it appears from that that, yes he was given more.

Michael Landrum, Tr. p. 263

This court, therefore, finds that the Department of Wildlife and Fisheries, did in fact breach their consent judgment and contractual agreement with Herman Hebert by revoking his permits to collect hatchling alligators, and as such is liable to him for damages resulting from that breach.
19The obvious damages herein would equal the net profits Mr. Hebert would have realized had he been allowed to continue catching hatchlings for the entire 10 year period. The court is of the opinion that the best and most accurate formula for computing this damage figure is that formula set out in the 1990 Economic Impact Study, (Plaintiff Exhibit S; Defendant Exhibit 57) a document not prepared in anticipation of this trial.
The testimony at trial showed that it cost Mr. Hebert approximately $6.00 each to capture hatchlings. His actual operating cost as verified by his income tax returns indicate an average of $5.44 per alligator, while his feed cost indicate a cost per alligator of $4.20. Using the 30% return figure in the study formula and the revenue figures of $20 per foot and $5.00 per pound the court arrives at the following damage amount:
Cost per Hatchling Revenue @ $20 $ 6.00 00 o
Operating Cost Meat @ $5 $ 5.44 to o
Feed Cost $ 4.20
30% Return $11.80 Gross Revenue 100.00
Cost to Harvest $27.44. 27.44>
Net profit per ; alligator 72.56
Times 60% yeai •ly allotment 600
Yearly Net pro! $ 43,536.00
Years remaining on contract _9
TOTAL LOSS ] PROFIT $391,824.00
(The court only used the 9 years remaining on the agreement since the plaintiff did actually collect alligators his first year. The Court considers 60% to be a *28 reasonable average of what plaintiff would have been able to collect of his original 1,000 alligator allotment)
For the above reasons and facts, the court finds in favor of Herman Hebert and against the Department of Wildlife and Fisheries in the amount of $391,824.00.
THUS DONE AND SIGNED IN Plaque-mine, Louisiana this 23rd day of August, 1994.
/s/ [Signature]
Judge
FILED Aug. 23 3:16 PM ’94
/s/ [Signature]