FOGG, Judge.
In this action to recover damages due to the flooding of The Warwick Apartments, issues concerning HabiHty and damages are raised on appeal. For the following reasons, we affirm the judgment of the trial court.
FACTS
The Warwick Apartments were constructed at 8001 Jefferson Highway in the City of Baton Rouge in the late 1970’s. Adjoining the apartment complex property to the southeast is a tract of land having the street address of 8009 Jefferson Highway (the adjacent property). Brandon Street is immediately to the south of the adjacent property and runs perpendicular to Jefferson Highway.
Prior to the construction of The Warwick Apartments, a swale ran across the apartment complex property and the adjacent property. The Warwick Apartments were constructed over this low-lying stretch of land. The swale emptied, both before and after the construction of The Warwick Apartments, into an earthen ditch beneath the Brandon Street bridge, which is located near *897 the southeast comer of the adjacent property.
A partnership known as Warwick Apartments Baton Rouge (Warwick) purchased The Warwick Apartments in the fall of 1976 and has owned and operated it continually since that time. At the time Warwick purchased the complex, Jefferson Highway was a two-lane roadway, and the adjacent property was vacant, except for a small building near Jefferson Highway.
The area experienced flooding as early as 1959. Lindsay Landreneau, former co-owner of The Warwick Apartments, testified that between 1976 and 1980 some flooding occurred every two to three years, affecting six to nine apartments. Linda Sheridan, an engineer for the City of Baton Rouge, testified that flood claims were filed by The Warwick Apartments in May of 1980, December of 1982 and April of 1983.
In 1984, Washauer Development Corporation [1] (Washauer) acquired the adjacent property and began development of a shopping center. Architect James G. Howell was retained to design that portion of the structure that was above the ground; Engineer Ronald K. Ferris was retained to design the subsurface construction. Washauer intended to construct the shopping center buildings over the natural drainage servitude that existed along the swale; however, local ordinances prohibited building over ‘a natural drainage servitude. This difficulty was overcome when Ferris successfully urged the local authorities to revoke the servitude as to the swale. The revocation was conditioned on the dedication of a new servitude of drainage around the rear of the adjacent property. The new servitude of drainage was implemented by the construction of a forty-two inch subsurface pipe running along the rear of the adjacent property. In December of 1985, the adjacent property was sold by Washauer to a corporation known as The Commons at Jefferson, Inc. (The Commons), which substantially completed the construction of the shopping center by January of 1986.
During the construction of the shopping center, the height of the adjacent property was raised to a level approximately two feet higher than that of the apartment complex property. Additionally, a parking lot was built on the property. A cement wall, approximately two feet high, located near the property line of the shopping center property and the apartment complex property constituted the end of the parking lot. This wall acted as a retaining wall in that it prevented water from flowing from the apartment complex property onto the adjacent property. Additionally, there were no adequate provisions by which water draining off the apartment complex property could reach the forty-two inch subsurface pipe running along the rear of the adjacent property.
In 1986, The Warwick Apartments experienced at least three floods in which eighteen units were damaged. By July of .1987, inlets, which channeled water draining off the apartment property into the subsurface drainage, were installed along the retaining wall. Thereafter, such flooding occurred less frequently. In February of 1988, seventeen units flooded; in August of 1988, fifteen units flooded.
In 1989 and 1990, the State of Louisiana, through the Department of Transportation and Development (DOTD), widened Jefferson Highway to make it four lanes. As part of the project, DOTD replaced the open ditch along Jefferson Highway with a pipe which ran along the highway, channeling the runoff water to the outfall area beneath the Brandon Street bridge. DOTD constructed the pipe in such a manner that its outfall end, which was located beneath the Brandon Street bridge, was substantially buried. The widened highway was sloped so that its lowest point was in front of the one of the driveways for The Warwick Apartments.
In 1990, the apartment complex experienced three floods in which four or fewer units were damaged. In 1991, two floods occurred, one in which three units were damaged and one in which eighteen units were *898 damaged. Eighteen units were again damaged by flooding in March of 1992.
Warwick initiated this action for damages of $2,250,000 due to the flooding of The Warwick Apartments. Named as defendants were DOTD; City of Baton Rouge and the Parish of East Baton Rouge, through the Department of Public Works (City-Parish); Washauer; The Commons; Ferris and Associates Engineering, Inc. (Ferris, Inc.); James G. Howell; James G. Howell, Architect, A Professional Corp. (Howell, Inc.); State Farm Fire and Casualty Company (State Farm); and Great American Surplus Lines Insurance Company (Great American). Howell, Howell, Inc., Washauer, Great American, State Farm and The Commons were voluntarily dismissed, ' with prejudice. Therefore, the remaining defendants at . trial were City-Parish, Ferris, Inc. and DOTD. After a five day trial, the trial court rendered judgment, setting the sum to which plaintiff was damaged at $200,000 and allocating fault as follows: 60% to The Commons, 30% to City-Parish, and 10% to DOTD. Since The Commons was previously dismissed from the suit, the court reduced the damages as to the remaining defendants and found DOTD and the City-Parish to be solidarily liable for the sum of $80,000. Warwick, DOTD and City-Parish appealed.
ISSUES
On appeal, Warwick contends the trial court erred in its apportionment of fault among the parties, in awarding $200,000 for the depreciation value of the property due to the flooding, in failing to award any amount for inconvenience plaintiff suffered as a result of the flooding, and in failing to award damages for plaintiffs loss of past rental income caused by the flooding. DOTD argues that the trial court erred in assessing 10% fault against it. City-Parish asserts that the trial court erred in its assessment of fault and in its assessment of damages.
LIABILITY
The trial court based its assessment of fault on a determination that The Warwick Apartments were originally constructed in a low-lying area and that The Warwick Apartments’ flooding problems, which predated plaintiffs purchase of the property, were increased by the following three factors: the construction of the shopping center with inadequate drainage; the City-Parish’s approval of faulty plans for the construction of the shopping center “without really scrutinizing them”; and the widening of Jefferson Highway by DOTD with inadequate drainage.
On appeal, City-Parish and DOTD seek to have the amount of fault assessed against them reduced, contending that the flooding that occurred after 1987 was due to natural factors unrelated to them. Warwick seeks to' have the fault assessed against City-Parish and DOTD increased. Warwick contends the impediment to drainage caused by the shopping center was minimized by the construction of the inlets along the retaining wall in July of 1987 and, thereafter, the main problems were the lack of maintenance of the outfall area under the Brandon Street bridge, which was caused by the fault of City-Parish and the burying of the outflow end of the drainage culvert constructed by DOTD as part of the widening of Jefferson Highway.
The trial court rejected plaintiffs contention that City-Parish incurred some liability by failing to properly maintain the outfall area beneath the Brandon Street bridge. Rather, the trial court relied on the testimony of Mr. Guy Wayne Sledge, plaintiffs expert engineer, who testified that the condition of the outfall area did not result in the flooding. Where factual determinations are based on determinations regarding the credibility of witnesses, the manifest error standard of review demands great deference to the trier of fact’s findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). This rule applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). We find no manifest error in the trial court’s conclusion that the degree to which the outfall area was maintained did not cause or increase the flooding of The Warwick Apartments.
*899 The evidence clearly supports the trial court’s conclusion that the frequency and severity of flooding increased after the construction of the shopping center and, while the flooding decreased after installation of the inlets in the retaining wall of the shopping center parking lot, it still occurred more frequently than prior to 1984. Furthermore, it is undisputed that the topography of the area changed since 1984 and that these changes are partially due to the expansion of Jefferson Highway and partially due to the construction of the shopping center. Also, the subsurface drainage facilities changed. That plaintiff was damaged by these changes and the extent to which each party is liable for those damages is a factual determination. It is well settled that a court of appeal may not set aside a trial court’s findings of fact absent manifest or clear error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After thoroughly reviewing the entire record, we conclude that the trial court’s allocation of fault is not manifestly erroneous, and we decline to disturb it.
DAMAGES
The trier of fact has much discretion in fixing the amount of damages due, and this determination will not be disturbed on appeal unless there is an abuse of discretion. Creel v. SA. Tarver & Son Tractor Co., Inc., 537 So.2d 752 (La.App. 1st Cir. 1988). The trial court based the damages award for the reduction in the market value of the property on the appraisal report of the DOTD’s expert, Mr. Michael J. DeFelice, rather than on that of the plaintiffs expert, Mr. William F. Cobb. The trial court accepted Mr. DeFeliee’s conclusions because Mr. DeFelice based his valuations on information that the apartments flooded prior to 1985, and even experienced flooding in the 1970’s, and thus, determined the damages due to an increase in the frequency of flooding. Mr. DeFelice concluded that the estimated damage to the property from the increased frequency of flooding was $200,000. On the other hand, Mr. Cobb disregarded the history of flooding and compared the market value of the property with no flooding problems to the market value of the property with the flooding problems.
After reviewing the appraisal reports and testimony of Mr. Cobb and Mr. DeFel-ice, we cannot say the trial court erred in basing the damages award on Mr. DeFeliee’s conclusions. The factfinder can credit the testimony of one expert witness where the testimony of the expert is not patently unsound and reject in part the testimony of another expert witness. See Lirette v. State Farm Insurance Co., 563 So.2d 850 (La.1990). Other testimony and evidence in the record support the figures Mr. DeFelice used in his valuation of the property, such as his inclusion of loss of rental due to prior flooding in his valuation of the property before 1985, and his use of the actual operating expenses for The Warwick Apartments as opposed to what he believed were appropriate operating expenses.
Warwick contends further that the trial court erred in failing to award it damages for inconvenience and loss of past rental income. The trial court disallowed plaintiffs claims for inconvenience and loss of rental income for past floods because it believed the $200,-000 award included these items. However, these items were considered only as a factor in the determination of the present value of the property, and thus, were not included in the final result. Although the trial court erred in disallowing these awards on this basis, we find that plaintiff is not entitled to awards for inconvenience and loss of rental income.
We have thoroughly reviewed the jurisprudence and the property damages cases cited by plaintiff and in no case were damages for inconvenience were awarded to a corporation; rather, damages for inconvenience in these cases were awarded to individuals. Furthermore, several courts have denied corporations damages for mental anguish, which is analogous in its nature to inconvenience. Hogan Exploration, Inc. v. Monroe Engineering Associates, Inc., 430 So.2d 696 (La.App.2d Cir.1983); M & A Farms, Ltd. v. Town of Ville Platte, 422 So.2d 708 (La.App. 3d Cir.1982). Therefore, the trial court did not err in failing to award damages for inconvenience.
*900 Other than trial testimony, the only evidence to support plaintiffs claim for loss of past rental income due to flooding is contained in the appraisers’ reports. Yet, the appraisers based their calculations as to the lost rentals on information provided them by attorneys for the parties. The only evidence produced at trial as to loss of past rental income was the testimony of Ms. Sherry Chenevert, the apartment manager, Ms. Jamie Blouin, the assistant manager, and Mr. Gerald Villenes, director of Patrician Management (the company which managed The Warwick Apartments). Both Ms. Chenevert and Ms. Blouin testified that four people moved out when eighteen units were flooded in October, 1991; yet neither witness produced rent rolls, which Warwick possessed, or testified as to the amount of rent lost. Furthermore, Ms. Blouin testified that those apartments were re-leased in two and one-half to three weeks. Ms. Chenevert also testified that in March, 1992, eighteen units flooded. On that occasion, eight or nine tenants went to hotels at the expense of one of the owners of The Warwick Apartments; the remainder moved out. Mr. Villenes testified that after a major flood in June, 1989, most of the tenants in the eighteen affected units moved out. Again, no evidence was produced to quantify these damages. Because this evidence is insufficient for an award of damages for lost rentals, the trial court did not err in disallowing this item of damages.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal in the amount of $790.74 are assessed equally between Warwick and DOTD, with DOTD responsible for $395.37.
AFFIRMED.

. A corporation named Retail Environments acquired ownership of the adjacent property on June 21, 1984. On August 21, 1984, the name of Retail Environments, Inc. was changed to Wash-auer Development Corporation.