| t GREMILLION, Judge.
This is an appeal of the jury’s verdict finding that Malcolm D. Martin, the plaintiff-appellant, and Lakeside Bancshares, one of the defendants-appellees, did not enter into a contract whereby Martin was to receive severance benefits over and above those provided for in his October 21, 1992 contract. For the following reasons, we affirm.
PROCEDURAL HISTORY
Martin, the former president of Lakeside National Bank of Lake Charles (Bank), filed this suit against Lakeside Bancshares, Inc. (Bancshares), the Bank’s holding company, asserting two breach of contract claims and detrimental reliance. The latter claim was dismissed by directed verdict because Martin failed to prove that he lost any job opportunities because of the alleged breach of contract.
| ¿The breach of contract claims concern severance benefits. The first claim is based upon an October 21, 1992.employ-ment contract Martin had with the Bank. Martin claimed that the severance benefits he received under this contract were $15,-000.00 less than provided for in the contract. The jury found that Martin was indeed entitled to an additional $15,000.00.
It is Martin’s second breach of contract claim that is the focus of this appeal. This alleged contract arises from the proposed acquisition of the Bank by First Commerce Corporation, the parent company of First National Bank of Lake Charles. Because of this proposed acquisition, Martin knew that he would lose his job due to First Commerce’s existing presence in Lake Charles. He then submitted a Supplemental Severance Package to the Compensation and Benefits Committee which gave the committee the option of providing severance benefits equal to two and one-half years or three years of salary, in addition to the six-months of severance benefits provided for in his 1992 employment contract. The committee approved three years of benefits and determined that the source of funds would be the purchase price paid by First Commerce.
Attorneys for the Bank then advised the Chavanne family, owners of 44% of the Bank’s stock, of the supplemental severance package. On June 16, 1994, the Cha-vannes notified the Bank that they would not approve any additional severance benefits. As a result of this rejection, the severance package was not presented to the board of directors for their approval.
The outside members of the board of directors of Bancshares called a special meeting the morning of June 23, 1994 to address the supplemental severance ^benefits issue. At this meeting, the outside directors agreed to present to the entire board four sealed ballots at a meeting to be held later that same day. Two of the ballots, numbers three and four, are at the heart of this case:

Ballot No. S

Provide additional severance benefits (beyond the existing six month contracts) to the four executive officers *1047 with contracts, namely: Martin, Roberts, Betz and Beasley, for the following additional period of time beyond their existing contracts on the same other items and conditions in those contracts, with the cost of same to be deducted from the First Commerce purchase price.
Estimated Cost
-0- -0- $
$ 260,000 6 months $
$ 520,000 12 months $
$ 780,000 18 months $
$1,040,000 24 months $
$1,300,000 36 months $
Example — By selecting 12 months, you are voting for a total of eighteen months in benefits, with the first six months at the cost of First Commerce.
YES NO

Ballot No. h.

All Directors will execute the required individual joinder in a Definitive Agreement (on terms of the last draft with Gerrish’s comments) with First Commerce that includes the provisions approved on Ballot Nos. 1, 2 and 3. The Chavannes will be asked to commit to and/or sign same by the First Commerce deadline for same. Upon their failure to do so, counsel are directed to ask for Judge Wilson and/or Judge Trimble to order the Chavannes’ representative(s) to a settlement conference where the signature on the joinder with the above terms will again be demanded.
YES NO
| ¿With one exception, the board of directors voted to provide additional severance benefits equaling twelve months to the four named executive officers, and all voted “yes” on ballot number four. Informal discussions were then held with the Chavannes, who strenuously objected to any additional severance benefits over the six months provided for in the 1992 employment contracts. Soon afterwards, the Chavannes again objected to the additional benefits during a conference held with the magistrate judge in federal court. As a result of these objections, the ballot provisions were never incorporated into the definitive agreement.
Martin claims that the ballot votes formed a contract between Baneshares and him. He suggests that by signing and adopting ballot number three, Baneshares made an unequivocal commitment to pay him an additional twelve months of severance benefits. According to Martin, ballot number three was an offer which he accepted by signing ballot number four. After the presentation of evidence, the jury found that Lakeside National Bank did not pay Martin all of the severance benefits owed under the October 21, 1992 employment contract and awarded him $15,000.00. However, on the issue of severance benefits over and above those provided in the October 21, 1992 contract, the jury found that there was no contract entered into by Baneshares and Martin, and dismissed his claim. It is Martin’s contention that the board of directors contracted to place the four ballots in the definitive agreement to create a “line in the sand” because they knew the Chavannes would be unwilling to approve the additional severance packages, but they wanted to stare them down, to see if their unwillingness to approve such packages was as strong as their desire to complete the sale of the bank. On the other hand, the Chavannes were adamant that | sthey would not have agreed to sign the Definitive Agreement if it included additional severance benefits to Martin even if it meant that the sale of the bank fell through.
*1048 ANALYSIS
“A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.” La.Civ. Code art.1906.
A contract is formed by the consent of the parties established through offer and acceptance.
Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
La.Civ.Code art.1927. In King v. Strohe, 95-656 (La.App. 3 Cir. 5/8/96); 673 So.2d 1329, 1337, this court stated, “While the ultimate determination of the parties’ intent is a mixed question of fact and law, the determination of the subjective intent of the parties to the exchange is a question of fact....” In Lirette v. State Farm Insurance Co., 563 So.2d 850, 852-53 (La.1990) (citations omitted), the Louisiana Supreme Court discussed the reviewing court’s role in evaluating the trial court’s inferences of fact and evaluations of credibility:
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
Un the case sub judice, the jury found that no contract existed between Martin and Bancshares. There is sufficient evidence in the record to support the jury’s determination that there was no offer and acceptance. For instance, the jury could have easily been swayed by the testimony of Bill Monk, attorney for Bancshares. He attended both meetings held on June 23, 1994, and authored the four ballots as well as the minutes of the two meetings. He testified that these ballots were proposals to be presented to the Chavannes for their approval, and that no one at either meeting indicated that these ballots constituted a contract between Martin and Banc-shares. The Chavannes adequately demonstrated at trial that they would not accept the proposal (offer) made by the Board of Directors on behalf of Martin. Their actions or inactions were clearly indicative of their consent. The jury was faced with two views of the evidence, and evidently chose to reject Martin’s claim and found that no contract was formed. Because we find no manifest error in that determination, we dismiss this assignment of error, and affirm the judgment of the trial court.
CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Malcolm D. Martin.
AFFIRMED.
COOKS and SAUNDERS, JJ., DISSENT.