944 So.2d 628 (2006)
Henry HORSTMANN
v.
George A. FARBER.
No. 2005 CA 2213.
Court of Appeal of Louisiana, First Circuit.
September 27, 2006.
F. Timothy Garlick, Folsom, for Plaintiff/Appellee, Henry Horstmann.
Paul Antoine Lapeyrouse, Chauvin, for Defendant/Appellant, George A. Farber.
*629 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge LEON A. CANNIZZARO, Jr., serving as judges ad hoc by special appointment of the Louisiana Supreme Court).
LEON A. CANNIZZARO, JR., Judge Ad Hoc.
This case involves a claim for payment of amounts that the plaintiff, Henry Horstmann,[1] claimed were owed to him by the defendant, George A. Farber, M.D. The trial court judge rendered a judgment in favor of the plaintiff in the amount of $20,978.26. The judge also awarded attorneys' fees in the amount of $5,244.57, for a total judgment of $26,222.83 plus costs and interest from the time of judicial demand until paid. Dr. Farber is appealing the judgment.

FACTS AND PROCEDURAL HISTORY
Mr. Horstmann filed suit against Dr. Farber to collect money allegedly owed to Mr. Horstmann by Dr. Farber in connection with an oral agreement between the two men, who had a business relationship for a number of years. Mr. Horstmann operated a horse breeding business for Dr. Farber on a farm that was owned by Dr. Farber. Mr. Horstmann was paid $3,300.00 a month for his services in connection with the breeding operation. Additionally, Dr. Farber permitted Mr. Horstmann to conduct a horse training business of his own at the farm. Mr. Horstmann trained Dr. Farber's horses, as well as horses owned by others. Mr. Horstmann billed Dr. Farber on a monthly basis for the horse training services that were rendered to Dr. Farber.
In the instant suit only the charges for training Dr. Farber's horses were at issue. Mr. Horstmann claimed that Dr. Farber owed him $24,620.00. Included in this amount were Mr. Horstmann's charges for training Dr. Farber's horses and an invoice from The Ponchatoula Feed & Seed Store (the "Feed Store") in the amount of $3,353.30 for feed that Mr. Horstmann had purchased to feed Dr. Farber's horses.
Dr. Farber responded to Mr. Horstmann's lawsuit by filing an answer denying that he owed any money to Mr. Horstmann. Dr. Farber also asserted that Mr. Horstmann overcharged him for the training services and that Mr. Horstmann used Dr. Farber's money to maintain horses other than those owned by Dr. Farber.
At the trial only two witnesses testified. Mr. Horstmann testified, and his wife, Colleen Horstmann, testified.
Mrs. Horstmann testified that she prepared the bills for her husband's horse training business. She identified the invoices that Mr. Horstmann claimed had not been paid by Dr. Farber. She explained that the monthly invoices contained the training charges for each horse whose name was listed, the number of days each horse was trained, and the daily charge for training each horse. Additionally, the invoice included an itemized list of expenses that were to be paid by Dr. Farber.
Ms. Horstmann further explained that there were two barns that housed horses on Dr. Farber's farm. One barn held broodmares and their young. The other barn housed the horses that Mr. Horstmann was training. The food for all of the horses on the farm was purchased in bulk using Dr. Farber's funds, but under Mr. *630 Horstmann's agreement with Dr. Farber, Mr. Horstmann assumed the cost of the food that was consumed by the horses in the training barn. Therefore, Dr. Farber was given a credit on the monthly invoices for the cost of any food that was eaten by the horses in the training barn.
Mr. Horstmann testified at the trial regarding the services that he performed for Dr. Farber. He said that he ran a horse breeding operation for Dr. Farber and generally operated Dr. Farber's farm where the breeding operation was conducted. Mr. Horstmann was paid a set amount each month for this work. Mr. Horstmann also trained some of Dr. Farber's horses, and he charged Dr. Farber a daily rate for each horse he trained. The daily rate for training a horse depended on what was involved in training that particular horse. Mr. Horstmann maintained training charts showing what was done with each horse on a daily basis. The training charts were used to prepare the monthly invoices.
In addition to seeking payment of the $20,978.26 reflected on the unpaid invoices, Mr. Horstmann also sought reimbursement from Dr. Farber for a bill from the Feed Store. Mr. Horstmann explained that Dr. Farber declared bankruptcy and that Dr. Farber could no longer purchase feed on credit from his usual supplier. Therefore, because the horses on the farm had to be fed, Mr. Horstmann opened an account in his name at the Feed Store so that he could buy feed for the horses. Mr. Horstmann testified that the feed for which the Feed Store had billed him $3,533.30 was used to feed Dr. Farber's horses. Additionally, he said that Dr. Farber was given a credit on the applicable monthly invoices for any of the feed that was given to horses in the training barn. Thus, Mr. Horstmann contended that he was owed reimbursement in the amount of $3,533.30 for the feed that he had purchased from the Feed Store.
Finally, Mr. Horstmann testified that he charged Dr. Farber $5.00 a day for taking care of the yearlings that were housed in the training barn, even though they were not being trained. Mr. Horstmann explained that the reason the yearlings were in the training barn was that once they had been weaned, they had to be separated from their mothers.
The yearlings were relocated to the training barn, where they could not see their mothers, because if they were anywhere near the mares, "the babies would stall walk themselves to death, break through a fence, do whatever they had to do." Because it was Mr. Horstmann's responsibility to assume the cost of feeding and maintaining the horses in the training barn, he charged Dr. Farber $5.00 a day to cover the expenses attributable to each yearling housed in that barn.
After Mr. and Mrs. Horstmann had testified, the trial court judge ruled that Mr. Horstmann had proved that he was entitled $20.978.26, the unpaid amount on the invoices that Mr. Horstmann had submitted to Dr. Farber. The judge also awarded attorneys' fees in the amount of twenty-five percent of the invoice amount, because she found that the payment sought by Mr. Horstmann was payment on an open account.[2] With respect to the Feed Store bill, the judge found that Mr. Horstmann had not carried his burden of proof, because *631 he did not show how much of the feed that he purchased from the Feed Store was consumed by the horses in the training barn and how much was consumed by the horses in the other barn. Therefore, Mr. Horstmann failed to prove that he was entitled to reimbursement from Dr. Farber on this amount.

DISCUSSION
Standard of Review
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), the Louisiana Supreme Court stated that it is well settled that an appellate court may set aside a factual finding of a trial court or jury only where the finding was based on a "manifest error" or was "clearly wrong". Id. at 844. Further, where there is conflict in the testimony, a trial court's or a jury's reasonable evaluations of credibility and reasonable inference of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court or jury. Id. Finally, where there are two permissible views of the evidence, the trial court's or jury's choice between them cannot be manifestly erroneous or clearly wrong. Id. See also Harvey v. Cole, XXXX-XXXX (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
Assignments of Error
Dr. Farber has raised three assignments of error. First, he contends that Mr. Horstmann did not carry his burden of proof at the trial. Second, he asserts that the testimony of the witnesses was not credible. Third, he claims that the trial court erred in awarding attorneys' fees to Mr. Horstmann. The third assignment of error is moot, however, because Mr. Horstmann has conceded in his brief that "[c]learly, the Appellee is not entitled to an attorney fee award." Therefore, we will consider only the first two assignments of error raised by Dr. Farber and amend the trial court judgment to delete the award of attorneys' fees.
Assignment of Error No. 1: The trial court erred in rendering its judgment against Dr. Farber, because Mr. Horstmann failed to carry his burden of proof by a preponderance of the evidence.
Dr. Farber asserts that the evidence and the testimony at the trial failed to establish that Mr. Horstmann maintained his accounts in the ordinary course of business. Additionally, Dr. Farber claims that Mr. Horstmann failed to present evidence to document the amounts he claimed were owed by Dr. Farber.
Both Mr. and Mrs. Horstmann testified regarding the invoices that were unpaid. Mrs. Horstmann testified in detail how the monthly invoices were prepared and what the invoices covered. Dr. Farber asserted affirmative defenses to Mr. Horstmann's claims, but no evidence was presented at the trial to support the defenses. Although Dr. Farber's attorney tried to discredit the testimony of Mr. and Mrs. Horstmann on cross-examination, there was no evidence or testimony on behalf of Dr. Farber to support the claim that the invoices introduced into evidence were inaccurate.
The trial court judge made a factual finding that the unpaid amounts shown on the invoices were accurate and were supported by the testimony and by the documents introduced into evidence at the trial. The trial court judge did not, however, require Dr. Farber to reimburse Mr. Horstmann for the amount Mr. Horstmann paid to the Feed Store, because the judge found that Mr. Horstmann had not carried his burden of proof with respect to that aspect of his claim. Mr. Horstmann did not present sufficient evidence to show the *632 amount of feed that was used for Dr. Farber's horses.
In reviewing the trial court's decision, we are bound by the judge's factual findings unless they are clearly wrong or manifestly erroneous. There is ample evidence in the record to support the trial court's findings, and there is nothing to indicate that the findings are either clearly wrong or manifestly erroneous.
We find no error in the trial court judge's decision. This assignment of error is without merit.
Assignment of Error No. 2: The testimony of the witnesses was not credible nor did the witnesses' testimony support the accuracy of the statements introduced in support of the debt.
The credibility of witnesses is something that can best be determined by the trial court judge. See Lirette v. State Farm Ins., 563 So.2d 850, 852 (La.1990), where the Louisiana Supreme Court held that the "manifest error-clearly wrong" standard of review demands great deference to the trier of fact's findings regarding the credibility of witnesses, because "only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said."
The trial court judge was able to observe the demeanor of Mr. and Mrs. Horstmann when they testified, and the judge obviously believed the testimony of the witnesses regarding the accuracy of the unpaid amounts shown on the invoices introduced into evidence. There is nothing in the record to indicate that the witnesses were not credible.
We must defer to the trial court's determination regarding the credibility of the witnesses. This assignment of error is without merit.

CONCLUSION
Mr. Horstmann has conceded that he is not entitled to collect attorneys' fees in this case. Therefore, we hereby amend the trial court judgment to delete the award of attorneys' fees in the amount of $5,244.57. The judgment of the trial court, as so amended, is hereby affirmed.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] During the course of the instant litigation, Mr. Horstmann and his wife instituted a bankruptcy proceeding in federal court. The legal interest in the litigation was transferred to the bankruptcy trustee, and the trustee was joined as a plaintiff in this case.
[2] La. R.S. 9:2781(A) provides in relevant part:

When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.