KLINE, J.
12This is an appeal from a judgment rendered in favor of a claimant whose money was seized on belief that it was subject to forfeiture in connection with an alleged drug transaction. After a trial on the merits, the trial court ordered the State to return the seized funds. For the following reasons, we affirm the trial court judgment.
FACTS AND PROCEDURAL HISTORY
On July 13, 2008, Nevelle Holder Bell, Sr. was driving a rented vehicle on Interstate 12 when he was stopped by a state trooper for changing lanes without a signal. While Mr. Bell’s vehicle was being searched, a narcotics detection dog responded to an area under the driver’s seat. The investigating office found no drugs in the vehicle. He did, however, find a mesh bag containing four bundles of cash totaling $19,960.00.[2] He also found an empty suitcase in the vehicle’s trunk. Mr. Bell was arrested and charged with violating La. R.S. 40:1041, which governs transactions involving proceeds from drug offenses. Mr. Bell, the vehicle, and the money were taken to the Livingston Parish jail. The record does not indicate whether Mr. Bell was ever prosecuted.
The State of Louisiana filed a Petition for Forfeiture in Rem; Mr. Bell answered the petition with a general denial. He also filed a motion for summary judgment, which was denied by the trial court. A bench trial was held on January 6, 2010, in which the trial court found that the State did not establish that the money was subject to forfeiture and ordered its return. Judgment was signed, and the State appealed.
The sole issue on appeal is whether the trial court erred in finding that the State did not sufficiently prove that the cash found in Mr. Bell’s vehicle was | .-¡subject to forfeiture pursuant to La. R.S. 40:2604, which defines the property subject to forfeiture.
THE PERTINENT STATUTES
Louisiana Revised Statute 40:2604 provides:
The following property is subject to seizure and forfeiture as contraband, derivative contraband, or property related to contraband under the provision of Section 4 of Article 1 of the Constitution of Louisiana:
(1) All controlled substances, raw materials, or controlled substance ana *1255 logues that have been manufactured, distributed, dispensed, possessed, or acquired in violation of R.S. 40:961 et seq.
(2) All property that is either:
(a) Furnished or intended to be furnished by any person in exchange for a controlled substance in violation of R.S. 40:961 et seq.
(b) Used or intended to be used in any manner to facilitate conduct giving rise to forfeiture, provided that a conveyance subject to forfeiture solely in connection with conduct in violation of R.S. 40:961 et seq. may be forfeited only pursuant to the provisions of this Chapter.
(3) Proceeds of any conduct giving rise to forfeiture.
[[Image here]]
Louisiana Revised Statute 40:2612 A provides:
A judicial in rem forfeiture proceeding brought by the district attorney pursuant to a Notice of Pending Forfeiture or verified petition for forfeiture is subject to the provisions of this Chapter. If authorized by law, a forfeiture shall be ordered by the court in the in rem action.
Louisiana Revised Statute 40:2612 G provides:
The issue shall be determined by the court alone, and the hearing on the claim shall be held within sixty days after service of the petition unless continued for good cause. In a forfeiture case wherein no claim is timely filed pursuant to the provisions of this Chapter, the burden of proof to forfeit shall be probable cause. In a forfeiture ease, wherein a claim is timely filed pursuant to this Chapter, the burden of proof required to forfeit the defendant’s property shall be a preponderance of the evidence. (Emphasis added.)
STANDARD OF REVIEW
|4It is well-settled that a court of appeal may not set aside a finding of fact by a trial court in the absence of “manifest error” or unless it is “clearly wrong.” Lirette v. State Farm Insurance Company, 563 So.2d 850, 852 (La.1990). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Id.
DISCUSSION
When a claim is timely filed, as here, the State has the burden of proving its entitlement to forfeiture by a preponderance of the evidence. La. R.S. 40:2612 G. A preponderance of the evidence means evidence of greater weight or evidence which is more convincing than that offered in opposition. ODECO Oil & Gas Company v. Nunez, 532 So.2d 453, 457 (La.App. 1 Cir.1988). The first circuit has generated little jurisprudence on civil forfeiture under La. R.S. 40:2612 et seq. since the law was amended in 1997, changing the burden of proof from probable cause to a preponderance of the evidence when a claim is timely filed. See State v. Green, 42,253, pp. 3-4 (La.App. 2 cir. 6/20/07), 960 So.2d 1270, 1272, for a discussion on the *1256 amendment; see also State v. Robinson, 09-2135, p. 1 (La.App. 1 Cir. 5/7/10), 39 So.3d 850 (unpublished; table), where this court recognized that in a contested forfeiture- proceeding, the State has the burden of proving by a preponderance of the evidence the connexity between the seized property giving rise to the forfeiture and illegal drug activity. Id.
| Jn the present case, the State argues that it has produced sufficient evidence to show that probable cause existed for forfeiture of the money and to show that the money was connected to illegal drug activity. Probable cause, however, is not the standard. La. R.S. 40:2612 G. Even so, probable cause is defined as a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspension. State v. Property Seized From Terrance Martin, 09-1417, p. 7 (La.App. 1 Cir. 3/30/10), 37 So.3d 1021,1028. It may be established by demonstrating, by some credible evidence, the probability that the money was in fact drug related which can be established by circumstantial or hearsay evidence. Id. 09-1417 at p. 8, 37 So.3d at 1028.
Here, the State argues that even though no drugs were found in the search of Mr. Bell’s vehicle, the $19,960.00 in cash was detected by a certified narcotic detection dog, which they argue, indicates that the money had been in the recent proximity to drugs. The State contends this large unexplained seemingly drug scented money in the vehicle combined with an empty suitcase in the trunk was enough to meet the State’s burden to show that the money was contraband. To bolster the State’s contention that the money was a product of illegal activity, it pointed to Mr. Bell’s two prior convictions for transporting narcotics with the intent to distribute. This totality of circumstances, the State claims, gives rise to the inference that the funds were connected to drug activity and thereby subject to forfeiture, establishing probable cause.
In support of his case, Mr. Bell testified that his company, Nevelle Bell d/b/a Bell Transportation, is in the business of delivering steel reels to Sugarland, Texas area. He testified that he and his employees primarily use cash to purchase fuel and other items because it saves money. He said that the cost of fuel is five cents per gallon, less if paid for with cash. He also testified that the cash found in the vehicle was an accumulation of money he was saving to purchase a trailer that he | r,intended to buy in Houston, but did not. He testified that he produced evidence to the investigating law enforcement officials of receiving $13,000.00 in cash from an earlier transaction and also had a record of receiving $10,000.00 from the sale of a piece of property. Mr. Bell also stated that he owns rental property, and his tenants regularly pay him in cash. Mr. Bell explained that he started his trucking company in 2004, and in 2006 he paid taxes on over $600,000.00. Mr. Bell also said that the empty suitcase was a non-issue because there is no evidence that the luggage ever contained drugs. He explained that he bought it at Wal-Mart, but had not transferred his clothing into the luggage.
In concluding that the State had not met its burden to show its entitlement to the money, the trial court found that even if there was a drug scent on the money, there was not enough evidence to tie Mr. Bell to the odor of drugs. It explained that Mr. Bell testified that he obtained the money from several sources and from different people. Finding that there was not enough evidence to connect Mr. Bell with illegal drug activity, the trial court ruled in favor of Mr. Bell and stated that the State’s evidence was insufficient to satisfy its statutory burden.
*1257 Even so, the trial court recognized in its oral reasons some inferences raised by the evidence. It pointed out that Mr. Bell’s convictions raised some alarms and that it recognized that having so much cash could be viewed as unusual. It said, however, that in the broad scheme of things, cash is often used “outside the IRS realm.” The trial court took into consideration the deposition testimony on the reliability of the use of certified narcotic dogs.
Additionally, the trial court heard corroborating testimony about Mr. Bell’s finances by the State’s expert. James M. McGill, an employee of the United States Drug Enforcement Administration, testified as an expert witness for the State. He testified that he had examined the documents in the course of his investigation of this matter. Mr. McGill testified that his review of the bank statements for Nevelle |7BeIl d/b/a Bell Transportation showed that large sums of money were deposited into his account. According to his records, $20,021,00 was deposited in February, $32,000.00 in March, and $41,000.00 in April. Mr. Bell further testified that he did pay taxes on $600,000.00 in a previous year. Another State expert, Dr. Kenneth Furton, stated via telephone deposition that studies have shown that over 90 percent of the currency circulating in the United States has been contaminated with trace evidence of illegal drugs. There is no indication in the record as to the quantity or type of contamination on the money taken from Mr. Bell’s vehicle.
After judging the credibility of the witnesses and the evidence introduced at trial, the trial court ruled that the State did not meet its burden to connect the money to illegal conduct. The trial court found that the State did not prove by a preponderance of the evidence a connexity between the seized property giving rise to the forfeiture and any alleged illegal activity-
After our careful review of the record herein, we conclude that the trial court’s factual findings are supported in the record and, therefore, are not manifestly erroneous or clearly •wrong. Thus, they cannot be overturned on appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Accordingly, we affirm the judgment of the trial court.
DECREE
For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal in the amount of $1,286.50 are assessed against the State of Louisiana.
AFFIRMED
KUHN, J, Concurs.

. The bills were in four separate stacks held together with rubber bands. Three of the stacks were of one hundred dollar bills, totaling sixty-one hundred dollars; the other stack contained forty-six ten-dollar bills, six hundred twenty-five twenty-dollar bills, and eighteen fifty-dollar bills.