COOKS, J.,
dissenting in part.
hi dissent from the portion of the majority opinion finding the trial court erred in awarding Mr. Reed the full amount of the $20,816.00 associated with his treatment for his seizure condition. I find the record supports the trial court’s award of the medical expenses incurred by Mr. Reed for treatment of his seizures.
The facts established the vehicle driven by Mr. Reed was struck by a van owned by Avoyelles Correctional Center. It was not disputed that Mr. Reed struck his head on the car window as a result of the collision. Mr. Reed testified, while not losing consciousness, he was disoriented from the blow to his head. He went to the emer *688 gency room the following day complaining of neck pain. Four days later, he returned to the emergency room, noting he had suffered a seizure. Three days later, Mr. Reed again went to the emergency room complaining of more seizures. According to Mr. Reed, he continued to experience periodic seizures over the next several months and again went to the emergency room seeking treatment .for the seizures. He was then referred to Dr. Charles Ugokwe, a neurologist, for further treatment of his seizure problem. Approximately one month after seeing Dr. Ugokwe and being prescribed medication, Mr. Reed’s seizures abated.
| ¡.Mr. Reed’s testimony was unequivocal in this matter. He stated he was thirty years old at the time of the accident, and had never experienced a seizure before. He stated he first experienced a seizure a few days after the accident, and would experience them periodically. He maintained nothing during that period in his life changed other than the occurrence of the accident. Mr. Reed’s wife corroborated the occurrence of the seizures.
Defendant relies on the testimony of Dr. Ugokwe for its position that the purported seizures were not related to the accident. A review of Dr. Ugokwe’s deposition testimony offers no basis for this contention by Defendant.
Dr. Ugokwe stated Mr. Reed’s description of his seizures, “fits a typical seizure.” Dr. Ugokwe noted his neurological examination of Mr. Reed revealed “no clear abnormality,” but noted when dealing with seizures “most of the time the exams are normal.” Dr. Ugokwe prescribed Depa-kote for Mr. Reed. When asked if he was surprised that Mr. Reed’s seizures “spontaneously stopped,” Dr. Ugokwe stated it was not surprising “if the Depakote took care of it.” Despite aggressive questioning from defense counsel, Dr. Ugokwe would not “call into question whether [Mr. Reed] ever had the seizures at all.” Dr. Ugokwe stated:
So its going to be hard to say does this person have seizure or does he not have seizure. So basically you’re going to go by what he tells you. Because he had his seizure and bit his tongue, I tend to think that he may have seizure for real. But if you put a gun at my head and say, “Can you swear?”, I’ll tell you, “No, I would not swear.”
Dr. Ugokwe also was asked if he could rule out the possibility that this car accident caused the seizures. He responded:
Q. Okay. Have you seen any cases like this before where a person develops some type of seizure symptoms from trauma?
A. .Yeah. A post-traumatic seizure, yeah.
Q. Would you say that that’s something that’s common?
A. It’s common in kids, as opposed to adults, but I’ve seen it in adults.
laQ. So is there any way that you could rule out the possibility that this car accident caused these seizures?
A. No. But when you see post-traumatic seizure in adults, they usually, have some head trauma.
Q. And would hitting your head on a window in a car accident constitute head trauma?
A. That’s a head trauma, because it would — even though it did not attribute to his headache, you probably would put everything under the umbrella of a post traumatic event.
Q. All right. I asked you if you could rule out the possibility that this car accident caused the seizures. Conversely, could you say in any way for sure that this car accident caused these seizures?
*689 A. There’s no way that I can say a hundred percent.
Dr. Ugokwe also noted that Mr. Reed suffered a traumatic brain injury, which made him more likely to suffer from seizures. He explained:
A traumatic brain injury, like in this— like this falls into the spectrum of — since he said he hit his head, he falls into the spectrum of traumatic brain injury. And — and he’s complaining of headache, although he never told me that'his headache is from the head injury. But everything falls into the umbrella that this guy may have a traumatic brain injury. But can you prove it? That’s very— even — that’s even harder to prove. Because I see the soldiers that come in for you to examine them for their disability, and it’s very hard to prove that they have a traumatic brain injury.
A review of Dr. Ugokwe’s testimony clearly shows he could not rule out that Mr. Reed suffered seizures, and that the seizures were related to the accident. The majority justifies its reversal of the trial court’s medical expense award on the position that any seizures experienced by Mr. Reed could have been caused by alcohol and drug use. Mr. Reed acknowledged he has a history of recreational use of drugs and alcohol, a history that unequivocally predated the accident in question. However, he noted he had never before experience any seizure until a few days after the accident. The trial court heard Defendant’s argument below that the seizures may have been caused by Tyron’s drug and alcohol use, but chose to disregard it. This certainly was a reasonable conclusion, particularly as Dr. |4Ugokwe’s testimony could not relate the seizures suffered by Tyron to any drug and alcohol use. Moreover, the uncontradicted testimony that Mr. Reed did not suffer any seizure until after the accident occurred further supports, as reasonable, the trial court’s factual determination that the accident, rather than Mr. Reed’s recreational drug use, was the cause of the seizures.
“Whether an accident caused a person’s injuries is a question of fact which should not be reversed on appeal absent manifest error.” Housley v. Cerise, 579 So.2d 973, 979 (La.1991) .(citing Mart v. Hill, 505 So.2d 1120 (La.1987)). It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of “manifest error” or unless it is “clearly wrong,” and where- there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette, 563 So.2d at 853. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
It is also well established that “a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct,” and the trier of fact is responsible for determining what damages, if any, |fiwere *690 caused by the accident. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993).
Louisiana jurisprudence has also long recognized that when a person was in good health prior to an accident, and symptoms appear after the accident, that person’s injuries are presumed to have resulted from the accident. Housley v. Cerise, 579 So.2d 973 (La.1991); Bernard v. Hartford Insurance Co., 09-71 (La.App. 3 Cir. 6/3/09), 12 So.3d 1098, writ denied, 09-1524 (La.10/9/09), 18 So.3d 1285; Stoll v. Allstate Ins. Co., 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089; Munch v. Backer, 10-1544 (La.App. 4 Cir. 3/23/11), 63 So.3d 181; Thomas v. Comfort Center of Monroe, LA, Inc., 10-494 (La.App. 1 Cir. 10/29/10), 48 So.3d 1228; Edwards v. LCR-M Corp., Inc., 41,125 (La.App. 2 Cir.7/12/06), 936 So.2d 233. A plaintiff is entitled to this so-called Housley presumption of causation if three elements are met: 1) the person was in good health prior to the accident; 2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and 3) there is a reasonable possibility of a causal connection between the accident and the disabling condition. Housley, 579 So.2d at 980. The application of the Housley presumption of causation to the facts is a question of fact and subject to manifest error review. That presumption can only be overcome should the trier of fact conclude the plaintiff was not credible and the claimed injuries were not caused by the accident.
I find the facts in this case clearly warrant the application of the Housley presumption that the seizures were caused by the accident. Mr. Reed specifically testified he had never suffered a seizure prior to the accident, and experienced his first seizure a few days after the accident. His wife corroborated that testimony, and there was nothing in the record to dispute same. His documented medical history following the accident shows several trips to the emergency room complaining of continuing seizures, leading to his ultimate referral to Dr. Ugokwe. ^Notably, Mr. Reed’s seizures abated after being prescribed medication by Dr. Ugokwe. Moreover, Dr. Ugokwe’s testimony specifically notes a head trauma, such as Mr. Reed suffered, could cause the onset of seizures. Thus, Mr. Reed more than established the reasonable possibility of a causal connection between the accident and his seizures. Mr. Reed was entitled to the presumption that the accident caused his seizures.
In conclusion, the record amply supports the trial court’s award of the $20,816.00 in medical' expenses incurred by Mr. Reed for treatment of his seizures. For the majority to hold otherwise is substituting its opinion for that of the trial court’s, which is beyond the reach of appellate review. I believe a complete affirmance of the trial court’s judgment is mandated in this case.