STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-71


SHAWN BERNARD

VERSUS

THE HARTFORD INSURANCE COMPANY, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20066286
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Jimmie C. Peters, Judges.

AFFIRMED.


 Harry Karl Burdette
The Glenn Armentor Law Corp.
300 Stewart St.
Lafayette, LA 70501
(337) 233-1471
Counsel for Plaintiff Appellant:
Shawn Bernard

**Jason R. Garrot**
**Briney & Foret**
**P. O. Drawer 51367**
**Lafayette, LA 70505**
**(337) 237-4070**
**Counsel for Defendants/Appellees:**
**Humberto E. Salcedo**
**Omni Insurance/Indemnity Company**

**SAUNDERS, Judge.**

This is an automobile accident case where the plaintiff prevailed at trial, but was dissatisfied by the judgment rendered. The plaintiff claims that the trial court erred by disregarding part of the uncontroverted medical testimony of his treating physician, by using manifestly erroneous reasoning, and by awarding damages that were abusively low.

After reviewing the record, we find no merit to any of the plaintiff's assignments of error. As such, we affirm the trial court's judgment and assess all costs of these proceedings to the plaintiff.

**FACTS AND PROCEDURAL HISTORY:**

On March 23, 2006, Shawn Bernard (Bernard) was driving west on West Pinhook Road in Lafayette, Louisiana when defendant, Humberto Salcedo, driving a different vehicle, attempted to pull out from a private drive, entered the roadway prematurely, and caused the vehicles to collide. Officer Jared Brown, with the Lafayette Police Department, testified that the extent of the damage to the plaintiff's vehicle was minor. Further, Officer Brown testified that there were no reports of injury at the scene.

Bernard began to have pain in his neck and sought treatment for his injuries on May 2, 2006, with Dr. John Humphries. Bernard was diagnosed with neck pain and a cervical strain by Dr. Humphries, but was given no prescription for pain medication nor was physical therapy ordered. On August 28, 2006, Dr. Humphries discharged Bernard from his care.

In the meantime, Bernard underwent two preemployment physicals where he denied having any neck pain and denied ever having been injured in any accidents within the last five years. Bernard allegedly began to have recurrent pain in his neck

shortly after the August 28, 2006, discharge, yet did not seek further medical treatment until December 20, 2006, again seeing Dr. Humphries up until he was again discharged on April 25, 2007.

At trial, Dr. Humphries' video deposition was admitted. Dr. Humphries was the only medical expert to testify in this case. In that deposition, Dr. Humphries stated that Bernard had sustained a soft tissue neck sprain/strain, that an MRI performed after August 28, 2006, revealed no abnormalities related to this accident, and that he had not seen any objective evidence of Bernard's injury other than a minimal decreased range of movement in his neck. Dr. Humphries also stated that the gaps in treatment are not uncommon with this type of injury.

Dr. Humphries was then made aware that Bernard, only a few days after reporting neck pain to him, denied having any neck pain in one of the preemployment physicals. After learning this fact, Dr. Humphries answered that he would "question the [veracity] of [Bernard's] subjective complaints to [him]."

After considering all of the testimony, the trial court awarded Bernard $4,500.00 in general damages for the pain and suffering he endured from May 23, 2006, to August 28, 2006. Bernard was also awarded $505.00 in special damages, representing the medical bills incurred in that same time frame. Bernard appealed this judgment, alleging the following three assignments of error:

**ASSIGNMENTS OF ERROR:**

1.  The trial court committed manifest error and was clearly wrong in ignoring the expert medical opinion of Dr. Humphries, who causally related his medical treatment of Shawn Bernard to the accident of March 23, 2006; the trial court's error was manifest because there was no other equally rational view of the evidence presented for the trier of fact to consider.

2.  The trial court's judgment had no reasonable basis because it ignored expert medical opinion and manifestly erred in its reasoning.

2

3. The trial court erred by limiting its awards to Shawn Bernard by granting no special and general damages past August 28, 2006. The trial court did award an amount for general damages suffered from March 23, 2006, to August 28, 2006, but the trial court erred, because the amount was abusively low.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, Bernard claims that the trial court committed manifest error when it ignored the expert medical opinion of Dr. Humphries, who causally related his medical treatment to the accident of March 23, 2006. He argues that there was no other equally rational view of the evidence presented for the trier of fact to consider.

"Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error." *Housley v. Cerise*, 579 So.2d 973, 979 (La.1991) (citing *Mart v. Hill*, 505 So.2d 1120 (La.1987)).

> It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Lirette v. State Farm Ins. Co.*, 563 So.2d 850, 852 (La.1990); *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. *Lirette v. State Farm Ins. Co.*, [][563 So.2d] at 853; *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106 (La.1990).

*Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.*, 99-201, p. 6 (La.App. 3 Cir. 10/19/1999), 748 So.2d 417, 421.

In the case before us, Bernard must show that the record, when viewed as a whole, provides no reasonable basis for the trial court to disregard part of Dr. Humphries' expert medical testimony. We find that Bernard has failed to do so.

Bernard relies heavily on the fact that the testimony of Dr. Humphries was not

3

controverted. As such, Bernard asserts that because there are not two rational views as to what medical treatment was related to the accident, the trial court erred when it found that not all of Dr. Humphries' treatment was related to the accident.

Bernard is correct that Dr. Humphries' testimony is not controverted. However, there is evidence in the record that Dr. Humphries' opinion relating all the medical treatment to the accident was not based upon all the facts. "Ultimately, the weight to be given expert testimony is dependent upon the facts on which it is based, as well as the professional qualifications and experience of the expert." *Rogers v. Roch*, 95-242, p. 16 (La.App. 5 Cir. 10/18/95), 663 So.2d 811, 817.

The following excerpt is from Dr. Humphries' deposition testimony admitted at trial:

Q    Doctor, if the patient reports [subjective] symptoms and has a range of movement that varies between visits, do you have to simply trust what the patient is telling you or is there any other way to verify what they're telling you?

A    I'm relying heavily on what the patient is telling me.

. . . .

Q    Assuming [Bernard] went to - - seven days after he first saw you, he took an employment physical at Stafford Health Care Clinic where he denies any neck injury whatsoever. Would that call you to question your opinions as to his [veracity] of what he told you?

A    Let me ask you, again. What visit are we speaking of?

Q    Well, I'm talking about an employment physical that he took through an outside agency, Stafford Health Care Clinic, where he signed and dated and noted that he had no cervical pain complaints.

A    What is the date of that?

Q    Its May 9, 2006. It's seven days after you first saw him.

A    That would not be what he told me on May 2nd.

4

Q       If he is on two occasions, two employment physicals, where he specifically denies any cervical pain complaints, would that call into question the [veracity] of his subjective complaints to you?

A       It probably would, yes.

We find that this exchange provides a reasonable basis for the trial court to disregard Dr. Humphries' testimony as to the relationship between medical treatment he provided to Bernard and the accident. Dr. Humphries treated Bernard starting on May 2, 2006. The employment physical where Bernard denied any neck pain was seven days later. As such, it was within reason for the trial court to disregard any testimony Dr. Humphries made regarding medical treatment he performed on Bernard after that date.

Next, Bernard argues that a gap in medical treatment is of no consequence. This statement is misguided. While a gap in treatment does not necessitate a finding that the medical treatment is not related to an accident, a trial court may use a gap in treatment as a factor in analysis when making its decision as to whether medical treatment is related to an accident. See *Griffin v. Kurica*, 03-190 (La.App. 5 Cir. 6/19/03), 850 So.2d 807.

Finally, Bernard argues that a person's injuries are presumed to have resulted from an accident if, prior to the accident, the person was in good health and, after the accident, the symptoms appear. This presumption is based upon our Supreme Court case of *Housley*, 579 So.2d 973. This case is distinguishable from *Housley*.

In *Housley*, there were medical records in the record indicating that Mrs. Housley was in good medical condition prior to her fall, and there were medical records objectively indicating that, just after her fall, her water bag was diagnosed as having ruptured prematurely. Here, we have no medical records or any indication that

5

Bernard was in good health prior to the accident other than his testimony, which the trial court found lacked credibility. Further, *Housley* is based upon a objective finding that Mrs. Housley's water bag was prematurely ruptured, whereas here, aside from a slightly limited range of movement in his neck, which was described as "almost full," Bernard had no other objective findings of an injury.

Accordingly, we find that there is ample evidence in the record for the trial court to disregard a portion, or even all, of Dr. Humphries' testimony. Further, we find no error in the trial court's decision not to apply the *Housley* presumption. As such, we find this assignment of error is without merit.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Bernard contends that the trial court's judgment had no reasonable basis because it ignored expert medical opinion and manifestly erred in its reasoning.

We have already determined in assignment of error number one that the trial court had a reasonable basis for disregarding Dr. Humphries' testimony. Thus, we will only address the part of Bernard's argument in this assignment not previously adjudicated.

Bernard argues that the trial court erred when it found that he lacked credibility based upon his purposeful misrepresentation in two preemployment physicals. We find this argument unconvincing.

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted).

6

Bernard goes to great lengths to convince this court that the trial court was not required to find him lacking in credibility when he lied in two preemployment physicals, but was truthful as to why he did so in court. We agree with Bernard. However, the question before us is not whether lying on two preemployment physicals mandates a finding such as was made by the trial court, rather the question before us is whether lying on two preemployment physicals provides a reasonable basis for the trial court to find as it did.

To help support his position, Bernard cites *Robertson v. Scanio Produce & Institutional Foods, Inc.*, 449 So.2d 459 (La.1984). In *Robertson*, our Supreme Court found that there was no sound reason in the record for the trial court to reject the uncontroverted testimony of a claimant for workers' compensation benefits.

Here, the trial court elucidated that its rejection of part of Bernard's testimony was based not only on the preemployment physicals, but also on when Bernard was impeached regarding how much weight he had to lift at work, and on when Bernard described his pain in court as constant ,while Dr. Humphries' medical records showed that Bernard described his pain as occurring approximately twice a month. Moreover, in *Robertson*, the claimant sustained a back injury involving a herniated disc and resulting in surgery. Surgery is an objective, measurable circumstance of an injury. Here, we only have Bernard's testimony and Dr. Humphries' testimony in which the doctor, when confronted with an established fact that Bernard had lied on two preemployment physicals, stated that his opinion may change. Thus, we find that Bernard's arguments in this assignment are also without merit.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Bernard alleges in his final assignment of error that the trial court erred by

granting no special and general damages past August 28, 2006. Further, Bernard contends that while the trial court did award an amount for general damages suffered from March 23, 2006, to August 28, 2006, it erred because the amount was abusively low.

In addressing Bernard's third assignment, we must look to two different standards of review. Bernard's first allegation is that the trial court should have found that the accident caused the pain and suffering he was allegedly enduring past August 28, 2006. As we stated in Assignment of Error number one, such finding are findings of fact and the standard of review of such questions is that of manifest error. *Housley*, 579 So.2d 973.

Bernard saw Dr. Humphries on August 28, 2006. The progress notes from that visit are as follows:

> Mr. Bernard states that his neck continues to do well and has given no pain since last visit.
>
> . . . .
>
> The cervical, thoracic and lumbar areas were all free of tenderness. He moved his neck fully and with no associated pain.
>
> . . . .
>
> My plans were to discharge Mr. Bernard today if he had no recurrent pain between now and the last visit. Such is reported to be the case.

Bernard did not see Dr. Humphries again until December 20, 2006, nearly four months later. While Dr. Humphries did testify that this was not out of the ordinary for some spinal injuries, we have already determined in Assignment of Error number one that the trial court had a reasonable basis for disregarding some, or all, of Dr. Humphries' testimony based on Dr. Humphries' reaction to learning that Bernard had denied any neck pain or accidents on two preemployment physicals, one of which was

just days after Bernard saw Dr. Humphries with complaints of neck pain. As such, based on that finding, we find no error in the trial court's decision to limit Bernard's recovery to the pain and suffering he endured prior to August 28, 2006.

Bernard's second allegation in this assignment is related to the quantum assessed by the trial court. This court, in *Guillot v. Doe*, 03-1754, p.5 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, 379-80 (footnotes omitted), stated, "[a]n appellate court should rarely disturb an award of damages due to the great and, even, vast discretion vested in the trial court. We can disturb such awards, only, when the trial court clearly abused its discretion."

Bernard cites *Kilpatrick v. Alliance Casualty & Reinsurance Co.*, 95-17 (La.App. 3 Cir. 4/5/95), 663 So.2d 62, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406, to bolster his position that the quantum awarded, $4,500.00 in general damages and $505.00 in special damages, for "roughly a six month period" was abusively low. First, as our Supreme Court stated in *Bourdier v. Louisiana Western R. Co.*, 133 La. 50, 62 So. 348, 349 (La.1913)(citing *Eichorn's Case*, 114 La. 712, 38 South. 526) "each case must stand on its own special facts". Moreover, we find *Kilpatrick* has little relation to the case before us.

In *Kilpatrick*, the plaintiff sought medical treatment two days after the accident, underwent physical therapy and was prescribed pain medication for over seven months, and complained of headaches, neck pain, and sleeplessness causing him to be treated with antidepressant sedatives and steroid injections. Further, the plaintiff in *Kilpatrick* had a preexisting medical condition that was aggravated by the accident in addition to a cervical strain.

Here, the trial court only found just over five months of Bernard's pain and suffering were related to the accident. Further, unlike the plaintiff in *Kilpatrick*,

9

Bernard did not seek medical treatment for a month and a half, was not prescribed any pain medication or physical therapy, had minimal complaints of intermittent pain, and had no preexisting condition that was aggravated by the accident.

Further, the date of the accident was March 23, 2006. Bernard did not seek treatment until May 2, 2006, and the trial court found that none of the pain and suffering Bernard alleged to have endured past August 28, 2006, were related to the accident. The actual time for which the trial court compensated Bernard was five days more than five months, calculated from the date of the accident rather than the date when Bernard actually sought treatment. This is not "roughly six months," as Bernard claims. As such, awarding Bernard just under $900.00 per month for what Bernard described to Dr. Humphries as pain only a couple times a month, and for what Dr. Humphries diagnosed as a soft tissue neck sprain/strain, is not unreasonable.

Accordingly, we find that the trial court was not manifestly erroneous in limiting Bernard's recovery to pain and suffering endured prior to August 28, 2006. Additionally, we find that the quantum awarded by the trial court, while perhaps on the lower end of the reasonable scale associated with the circumstances of this case, was not abusively low. As such, we dismiss this final assignment of error raised by Bernard.

**CONCLUSION:**

Bernard raised three assignments of error. After reviewing the record, we find that none of the assignments raised by Bernard have any merit. As a result, we affirm the trial court's judgment and assess all costs of these proceedings to Bernard.

AFFIRMED.