# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 12-1325

SHENAN SMITH PURVIS

VERSUS

GRANT PARISH SCHOOL BOARD AND
JANA LASHLEY

\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 17427
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, James T. Genovese, Shannon J. Gremillion, and John E. Conery, Judges.

Gremillion, J., dissents and adopts the trial court's reasons for judgment.
Conery, J., concurs in part, dissents in part, and assigns written reasons.

**REVERSED IN PART;
AFFIRMED IN PART, AS AMENDED;
AND RENDERED.**

**George A. Flournoy**
**Flournoy & Doggett (APLC)**
**Post Office Box 1270**
**Alexandria, Louisiana 71309**
**(318) 487-9858**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Shenan Smith Purvis**

**Jon K. Guice**
**Linda K. Ewbank**
**Hammonds, Sills, Adkins,**
**& Guice, LLP**
**1881 Hudson Circle**
**Monroe, Louisiana 71201**
**(318) 324-0101**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Grant Parish School Board and**
     **Jana Lashley**

**GENOVESE, Judge.**

In this personal injury case stemming from an automobile/school bus accident, Plaintiff, Shenan Smith Purvis, appeals the trial court's allocation of fault, awards of general damages and future medical expenses, and the assessment of costs. Defendants, the Grant Parish School Board and Jana Lashley (collectively Ms. Lashley), have answered the appeal, seeking a review of the trial court judgment denying their motion to supplement the record. For the following reasons, we reverse in part, affirm in part, as amended, and render. We also affirm the trial court's judgment denying Defendants' motion to supplement the record.

## FACTS AND PROCEDURAL HISTORY

On June 14, 2005, a collision occurred in Grant Parish when a northbound school bus driven by Ms. Lashley[1] and a southbound vehicle driven my Ms. Purvis and occupied by Jessica Thomisee collided. The rural parish road where the accident occurred, J. D. Camp Road, had no striped centerline of demarcation.

The issues of liability and damages were bifurcated in this matter.[2] Liability was tried on September 4, 2007. On September 19, 2007, the trial court issued a Memorandum Ruling and Reasons for Judgment apportioning fault 40% to Ms. Purvis and 60% to Ms. Lashley. A formal judgment was signed by the trial court on May 12, 2010.

---

[1] At the time of the accident, Ms. Lashley was in the course and scope of her employment with the Grant Parish School Board.

[2] Three separate lawsuits were filed as a result of this accident, and they were consolidated by the trial court for discovery and trial. The first action was filed by Ms. Purvis against Ms. Lashley and the Grant Parish School Board, and Defendants filed a reconventional demand against Ms. Purvis and her liability insurer, Safeway Insurance Company (Safeway). The second lawsuit was filed by Ms. Thomisee against Ms. Lashley, the Grant Parish School Board, and Safeway. The third lawsuit, a claim for subrogation, was filed by the Louisiana Workers' Compensation Corporation with the Office of Workers' Compensation, seeking reimbursement of the workers' compensation benefits paid by the Grant Parish School Board to Ms. Lashley. Only the claims of Ms. Purvis and Ms. Thomisee against Ms. Lashley and the Grant Parish School Board were ultimately tried.

The issue of damages was tried, by agreement of the parties, on the submission of depositions and medical records. After this evidence was submitted to the trial court, on October 23, 2009, Ms. Lashley filed a motion to supplement the record praying that she be allowed to supplement the record with evidence of a post-trial criminal conviction of Ms. Purvis. On December 21, 2009, the trial court signed a judgment denying Ms. Lashley's motion.

In its subsequent Reasons for Judgment of January 26, 2010, the trial court determined the remaining issue of damages and awarded Ms. Purvis property damages of $6,834.50, rental car expenses of $2,133.15, past medical expenses of $27,822.83, future medical expenses of $0.00, lost wages of $0.00, and general damages of $7,500.00. Costs were assessed against the parties in accordance with their respective percentages of fault. A concomitant judgment was signed on May 12, 2010.

On September 23, 2010, Ms. Purvis filed a Motion for New Trial "on the issues of liability, assessment of fault[,] and assessment of costs[.]" Following a hearing, the trial court signed a judgment on October 11, 2011, denying Ms. Purvis' Motion for New Trial.

Ms. Purvis appealed the judgments of May 12, 2010 and October 11, 2011.[3] Ms. Lashley answered the appeal, seeking a reversal of the December 21, 2009 judgment denying her motion to supplement the record.

## ASSIGNMENTS OF ERROR

On appeal, Ms. Purvis presents the following assignments of error for our review:

---

[3] Although the October 11, 2011 judgment denying the Motion for New Trial was included in Ms. Purvis' Motion and Order for Devolutive Appeal, it was neither assigned as an issue on appeal, nor was it briefed; accordingly, it is not considered herein. Uniform Rules—Courts of Appeal, Rule 2–12.4.

2

## I.

The district judge improperly saddled [Ms. Purvis] with 40% fault for a collision that occurred in her proper lane of travel.

## II.

The district judge's award of only $7[,]500.00 for past and future general damages was an abuse of discretion.

## III.

The failure to award future medical expenses was, legally and factually, erroneous.

## IV.

Under these circumstances, the assessment to [Ms. Purvis] of 40% of the costs was improper.

Considering these assignments of error, we will address the issues of fault allocation, the general damage award, future medical expenses, and the court costs assessment. Additionally, relative to Ms. Lashley's answer to appeal, we will consider whether the trial court erred in denying her motion to supplement the record.

## LAW AND DISCUSSION

*Liability*

Ms. Purvis asserts that the trial court erred in allocating 40% of the fault for the subject accident to her "for a collision that occurred in her proper lane of travel." We agree.

> Factual findings of a trial court are reviewed under the manifest error-clearly wrong standard of review. *Fontenot v. Patterson Ins.*, 09-669 (La.10/20/09), 23 So.3d 259. Under this standard, "an appellate court may not disturb a [trial court's] finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous." *Id*. at 267.

*Thibodeaux v. Comeaux*, 11-127, p. 5 (La.App. 3 Cir. 6/15/11), 69 So.3d 674, 679.

3

On the issue of liability, the trial court set forth the following in its reasons for judgment:

> The vehicles did not strike each other head on. Likely, each was attempting to drive in their respective lanes. However, due to the nature of the road (unpaved, no middle lane [sic]) at this particular spot (a bend or curve in the road) and given the large size of the school bus compared to the smaller size of [Ms. Purvis'] car, it is most likely that while driving along the road, and especially when maneuvering the curve, the left side of the school bus was encroaching over the center of the road and was partly in [Ms. Purvis'] lane.

The trial court concluded that Ms. Purvis' "vehicle, while not improperly in the middle of the road so as to collide head on with [Ms. Lashley], may have been hugging the center lane [sic] just enough so that the left corner of the bus snipped into the left corner of [Ms. Purvis'] vehicle." Therefore, "[i]t [was] the finding of [the] court that both parties were at fault in this accident."

The testimony of the drivers regarding the moments just before the accident happened were correctly characterized by the trial court as "conflicting." Each driver testified that the other driver crossed the imaginary center line of the roadway and caused the accident.

Ms. Lashley testified that Ms. Purvis "was in the middle of the road" before the accident occurred. Ms. Lashley placed the point of impact between the two vehicles in her lane of travel. Although she denied telling Ms. Purvis, or anyone at the scene, that she was inattentive just prior to impact, Ms. Lashley testified that she did not apply her brakes before the impact occurred. Rather, in her words, she only braked "on impact." When questioned about her failure to brake prior to impact, Ms. Lashley's response was that Ms. Purvis "came around the curve so fast in the center til it was just, I mean, by the time - - she had already hit me and I applied the brakes."

4

Contrary to Ms. Lashley's testimony, Ms. Purvis testified that as she was approaching the curve, she saw Ms. Lashley "driving the school bus coming into the curve[,] and she was looking down[,] and she just kept coming over into [her] lane." Ms. Purvis denied veering into the opposing lane of travel and explained that she "tried to get out of the way" but "couldn't move fast enough[.]" According to her testimony, she was able to get the front passenger side of her vehicle into the grassy area near the ditch. Ms. Purvis also testified that after the accident, she was approached by Ms. Lashley, who apologized to her and said that she had been reaching for some papers before the collision.

Ms. Purvis' testimony was echoed by her passenger, Ms. Thomisee. According to this witness, as they were going around the curve, she saw the school bus approaching, and she saw Ms. Lashley "looking down on the floor." She explained that Ms. Lashley was "bent down" and "[s]he never looked up until after she made impact with [them]." Ms. Thomisee testified that Ms. Purvis did not veer into Ms. Lashley's lane of travel. She also corroborated Ms. Purvis' testimony that after the accident, Ms. Lashley approached their vehicle, apologized, and admitted that she had been looking down and not paying attention. Ms. Thomisee testified that Ms. Purvis honked the horn and attempted to get off the roadway. When the impact occurred, part of Ms. Purvis' vehicle was off of the roadway according to this witness.

Michael Hataway, the officer who investigated the accident, concluded that based upon the debris and the skid marks made by Ms. Purvis' vehicle, there was no doubt in his mind that the point of impact was in Ms. Purvis' lane of travel. Officer Hataway admitted that the narrative portion of the accident report and the diagram that he prepared contained some inconsistencies. He explained that the diagram erroneously showed that the area of damage to the bus was on the right

front, rather than the left front. Given the location of the debris, and the skid marks on the roadway, Officer Hataway testified that the point of impact was "in what would have been the imaginary travel lane of the [Purvis] vehicle." Additionally, it was Officer Hataway's testimony that, at the scene of the accident, Ms. Lashley told him that "she was looking down at her gauges[,] and when she looked up[,] the vehicle struck her." Officer Hataway issued Ms. Lashley a citation based upon her stating to him that "she didn't have her eyes on the roadway, she was looking at the gauges just prior to the point of impact, and that she in fact drove across the imaginary centerline."

Mr. Dennis Groom came upon the accident scene after the collision occurred. It was his testimony that he was standing next to an emergency responder who was at the scene when he heard Ms. Lashley tell "him that she had dropped some papers and was looking down, and then she heard a collision and they hit." Additionally, his testimony placed the location of the debris in Ms. Purvis' lane of travel and the final resting place of the Purvis vehicle with the two front tires off of the roadway.

Significant for purposes of a liability determination are the photographs of the vehicles after the accident, which were also considered by the trial court. These photographs show that the damage to the school bus occurred to the left front of the vehicle, and the damage to Ms. Purvis' vehicle was on the left front fender.

Based upon the evidence, the trial court concluded that Ms. Purvis was "not improperly in the middle of the road" when the accident occurred. Rather, "the left side of the school bus was encroaching over the center of the road and was partly in [Ms. Purvis'] lane." Nevertheless, the trial court inexplicably and incomprehensibly, assessed Ms. Purvis with 40% of the fault for the accident.

6

This finding is unsupported by the record. By all accounts, except Ms. Lashley's, Ms. Purvis was traveling in her lane of travel and never veered into the opposing lane. She, and other witnesses, testified that Ms. Lashley was looking down and was inattentive to the roadway. Although Ms. Lashley denies this, it is consistent with her own testimony that she never applied her brakes before the impact occurred. On the other hand, Ms. Purvis honked her horn and attempted to move off the roadway. Moreover, the debris and the skid marks were clearly in Ms. Purvis' lane of travel.

Ms. Lashley strongly argues and emphasizes credibility, i.e., Ms. Purvis' lack thereof, in support of the trial court's determination of liability and damages. Though her credibility is definitely a factor for consideration, credibility, as it relates to the issue of liability in this case, is not the determinative factor. The determinative factor as to liability in this case is the physical evidence and the testimony of the investigating officer, neither of which are based upon Ms. Purvis' credibility. Moreover, independent evidence of Ms. Lashley's admission that she was "looking down" and, therefore, not paying attention was likewise a factor not based on Ms. Purvis' credibility.

Based upon the evidence in the record, we find the conclusion of the trial court that Ms. Purvis was 40% at fault for this accident to be manifestly erroneous. Accordingly, we reverse the judgment of the trial court finding Ms. Purvis to be 40% at fault and conclude that Ms. Lashley was 100% at fault in causing the accident.

*General Damages*

Ms. Purvis also asserts on appeal that the trial court's $7,500.00 general damage award was abusively low. We agree.

7

The Louisiana Supreme Court articulated the standard of review for general damage awards in *Duncan v. Kansas City Southern Railway Co.*, 00-66 (La.10/30/00), 773 So.2d 670, *cert. denied*, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001), as follows:

> General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir.1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; *Hollenbeck v. Oceaneering Int., Inc.*, 96-0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn*, 623 So.2d at 1260. As we explained in *Youn*:

> > Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.

*Id*. at 1261.

> The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.*, 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; *Reck v. Stevens*, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

*Duncan*, 773 So.2d at 682-83.

*Stelly v. Zurich Am. Ins. Co.*, 11-1144, pp. 3-4 (La.App. 3 Cir. 2/1/12), 83 So.3d 1225, 1228.

Undisputedly, as phrased by the trial court, Ms. Purvis "was not in perfect health at the time of the incident at issue." She had undergone a prior lumbar surgery, had fallen and injured her right shoulder and hand, had prior dental work done on the same tooth about which she complained after the accident, and had been treated for depression. Given Ms. Purvis' medical history, Ms. Lashley contends that except for the ankle injury, "Ms. Purvis failed to prove that the underlying accident aggravated the pre-existing injuries to her teeth, her shoulder and arm, her back and/or aggravated her pre-existing depression issues." However, the medical evidence does not support this assertion.

Ms. Lashley concedes that Ms. Purvis sustained a sprained ankle as a result of this accident. According to Dr. Rush, the injury was "significant[,]" caused swelling and instability, and was resolved by November 2005.

Ms. Purvis also incurred damage to two teeth for which she treated with Dr. Jones. Dr. Jones testified that one of her teeth had a "slight fracture" and was "chipped[,]" and a second tooth "had been fractured pretty severely[.]" In his opinion, Ms. Purvis needs an implant to replace her fractured tooth. Additionally, while it is true that Ms. Purvis had a capped tooth prior to the accident, there was no prior need for repair. When Dr. Jones saw Ms. Purvis just after the accident, with the exception of the fractures, her teeth were in "very good shape."

Ms. Purvis also suffered a cervical strain as a result of the accident. Her complaints of neck pain were consistent with the muscle spasm noted by Dr. Rush. Additionally, these complaints were corroborated by an MRI revealing a bulging disc at C6-7. Both Dr. Rush and Dr. Gunderson causally related Ms. Purvis'

cervical complaints to the subject accident, and both physicians opined that it was more likely than not that her cervical pain was not going to improve.

With respect to Ms. Purvis' shoulder injury, Dr. Drez, Dr. Brunet, and Dr. Brown[4] opined that Ms. Purvis has a SLAP[5] tear in her right shoulder. Dr. Drez and Dr. Brunet testified that this injury was causally related to the subject accident. Although the trial court was apparently not convinced of "the source" of this injury, it did conclude that it would, at least, "be a soft-tissue injury." The necessity for surgical repair of her shoulder, which would provide Ms. Purvis some relief, was agreed upon by the three doctors.

The subject accident also caused a lumbar strain. According to Dr. Gunderson, this lumbar strain was superimposed on the previously operated-on lumbar spine. An MRI performed in 2007 confirmed an annular tear at L4-5 and L5-S1.

Finally, Ms. Purvis complained of depression following the accident. Although the trial court found "little evidence in the record that shows to what extent her prior-diagnosed depression was affected by the accident at issue[,]" this was also a consideration.

For the injuries summarized above, the trial court awarded Ms. Purvis $7,500.00 in general damages. We acknowledge that Ms. Purvis had pre-existing medical problems, and we further acknowledge that the trial court found Ms. Purvis to have a serious credibility issue. However, credibility does not and cannot negate two fractured teeth, an ankle sprain, and the aggravation of a prior neck and back injury, all of which were fully corroborated by the medical testimony. Though Ms. Purvis does have a questionable criminal history, that does

---

[4]Dr. Brown was Ms. Lashley's choice for a second medical opinion on Ms. Purvis' condition.

[5] This acronym stands for a superior labrum tear occurring from the anterior to the posterior of the shoulder socket.

not negate her right to pursue and receive compensatory damages. We are unaware of any law that strips a person convicted of a crime of his/her right to pursue a tort action.

After reviewing the medical evidence and Ms. Purvis' testimony with regard to the pain that she suffered and continues to suffer as a result of this accident, we find that the trial court's award of $7,500.00 is abusively low. Ms. Purvis sustained an ankle sprain, two fractured teeth, a cervical strain, a lumbar strain which constituted an aggravation of a pre-existing condition, and a SLAP tear. Her complaints manifested themselves immediately following her June 14, 2005 accident and continued through the date of the trial. Considering the facts in this case, including the future medical treatment discussed below, and noting the trial court's award of $27,822.83 in past medical expenses, we find that the lowest amount that the trial court could reasonably have awarded is $35,000.00. S*ee Coco*, 341 So.2d 332. Accordingly, we hereby amend the general damage award and increase it from $7,500.00 to $35,000.00.

### *Future Medical Expenses*

On appeal, Ms. Purvis argues that the trial court's "failure to award future medical expenses was, legally and factually, erroneous." Specifically, the trial court found that Ms. Purvis failed in her burden of proving her entitlement to an award of future medical expenses for dental treatment, surgery to her shoulder, and physical therapy. Citing questionable credibility, the trial court found Ms. Purvis' statements that she would undergo this future treatment to be insufficient to meet her burden of proving that this expense would be incurred.

> This court previously addressed the issue of future medical expenses in *Cormier*[ *v. Colston*, 05-507 (La.App. 3 Cir. 12/30/05),] 918 So.2d 541. There, we explained:

11

> Medical expenses are a component of special damages. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Iwamoto v. Wilcox*, 04-1592 (La.App. 3 Cir. 4/6/05), 900 So.2d 1047. In meeting her burden of proof on the issue of future medical expenses, the plaintiff must show that, more probably than not, these expenses will be incurred and must present medical testimony that they are indicated and the probable cost of these expenses. *Veazey v. State Farm Mut. Auto Ins.*, 587 So.2d 5 (La.App. 3 Cir.1991).

*Id*. at 547.

*Wood v. Am. Nat'l Prop. & Cas. Ins. Co.*, 07-1589, p. 6 (La.App. 3 Cir. 12/23/08), 1 So.3d 764, 769.

Dr. Jones was of the opinion that correcting the dental problems Ms. Purvis suffered as a result of the accident would require a tooth extraction and the implantation of a prosthetic tooth. He testified that the future dental costs would total $2,500.00. There was no contradictory evidence on the need for the dental work, nor the amount. Additionally, Ms. Purvis testified that she is still experiencing pain and that she wants to have this work performed. Accordingly, we conclude that the trial court was manifestly erroneous in concluding that Ms. Purvis failed to prove this element of future medical expenses, and we award her that amount.

The need for a surgical repair of Ms. Purvis' shoulder as well as the amount to be incurred was likewise established by the medical evidence. According to the expert opinions of Drs. Drez, Brunet, and Brown, surgery was required to repair the SLAP tear to Ms. Purvis' shoulder followed by three to four months of physical therapy. The total future costs for the surgery and the subsequent physical therapy would total $21,506.25. The record contains no contradictory evidence on the need for the shoulder surgery, nor the amounts. Ms. Purvis testified that she also

wished to have this procedure done.  Therefore, we conclude that the trial court was likewise manifestly erroneous in concluding that Ms. Purvis failed to prove this element of future medical expenses, and we award her that amount.

For the foregoing reasons, we reverse that portion of the judgment of the trial court awarding $0.00 future medicals and render an award in favor of Ms. Purvis for future medical expenses in the aggregate amount of $24,006.25.

### *Assessment of Costs*

The trial court, "[a]fter taking into account equitable considerations" in accordance with La.Code Civ.P. art. 1920,[6] cast costs 60% to Ms. Lashley and 40% to Ms. Purvis, respectively.  In brief, Ms. Purvis asserts that "the district judge abused his discretion in casting the prevailing party with 40% of the court costs."

The trial court's assessment of costs was consistent with the percentages of fault it attributed to each party.  "While the trial court has much discretion in assessing costs ([La.Code Civ.P.] art. 1920), appellate courts are obligated to review this ruling and to assess costs which it considers equitable ([La.Code Civ.P.] art. 2164[7])."  *Lege v. State Farm Mut. Auto. Ins. Co.*, 386 So.2d 123, 125 (La.App. 3 Cir. 1980), *writ denied*, 392 So.2d 684 (La.1980) (quoting *Custom Builders & Supply, Inc. v. Revels*, 310 So.2d 862, 867 (La.App. 3 Cir. 1975)).

Having found error in the trial court's allocation of 40% fault to Ms. Purvis, as well as error in the trial court's award of both general and special damages, we

---

[6] Louisiana Code of Civil Procedure Article 1920 provides:  "Unless the judgment provides otherwise, costs shall be paid by the party cast[.]"  Further, "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."  *Id*.

[7] Louisiana Code of Civil Procedure Article 2164 provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.  The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

further find the trial court's assessment of 40% of the costs to Ms. Purvis to be likewise erroneous. We, therefore, reverse the trial court's judgment relative to the assessment of costs, and we tax all costs of court to Ms. Lashley.

*Answer to Appeal*

In her answer to appeal, Ms. Lashley seeks a reversal of the trial court's denial of her motion to supplement the record with evidence of Ms. Purvis' drug conviction which occured post-trial, but prior to the rendition of the judgment on damages. In denying the motion, the trial court noted that "this request for supplementation of the record comes at a time when the case has been submitted for decision." Additionally, the trial court found "that the probative value of this evidence [was] substantially outweighed by the consideration of unfair prejudice, confusion of issues, and [was] cumulative."

We find it significant that Ms. Lashley's motion was filed after the matter had been tried and submitted for decision. As such, the note of evidence had been closed. The motion was not made for the purpose of completing the record or for supplementing the record due to an inadvertent omission of documents. Rather, what was sought to be introduced was new evidence not available at the time of trial, akin to a motion for new trial. While a motion for new trial may be granted at the discretion of the trial court upon a finding of good cause, it is incumbent upon the mover to show, among other things, that the evidence is not cumulative in nature. *See* La.Code Civ.P. art. 1973;[8] *Bennett v. Porter*, 10-1088 (La.App. 3 Cir. 3/9/11), 58 So.3d 663.

In its written reasons denying Ms. Lashley's motion to supplement, the trial court reasoned that "[e]vidence of this conviction is of a category deemed

---

[8] Louisiana Code of Civil Procedure Article 1973 provides: "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

14

admissible" pursuant to La.Code Evid. art. 609(A).[9]  However, it noted that in accordance with La.Code Evid. art. 403,[10] evidence otherwise admissible under La.Code Evid. art. 609 may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."  Considering the nature of this evidence, the trial court found that its probative value was "very slight" and, moreover, "would be cumulative."  We agree with the trial court's determination and find no error in the trial court's denial of the motion.

## DECREE

For the reasons assigned, we reverse the trial court judgment allocating 40% fault to Shenan Smith Purvis, and we assess Jana Lashley with 100% fault for the subject accident.  We affirm the trial court's award of general damages, but amend same to increase this award from $7,500.00 to $35,000.00.  Additionally, we reverse that portion of the trial court judgment awarding $0.00 in future medical expenses, and we render an award of $24,006.25 for future medical expenses in favor of Shenan Smith Purvis against Jana Lashley and the Grant Parish School Board.  Finally, we affirm the trial court judgment denying Jana Lashley and the

---

[9] Louisiana Code of Evidence Article 609(A) provides:

> A. General civil rule.  For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible.  However, evidence of the name of the crime of which he was convicted and the date of conviction is admissible if the crime:

> (1) Was punishable by death or imprisonment in excess of six months under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party;  or

> (2) Involved dishonesty or false statement, regardless of the punishment.

[10] Louisiana Code of Evidence Article 403 provides:  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

Grant Parish School Board's motion to supplement the record. Costs of the

proceedings below and the costs of this appeal are assessed to Jana Lashley and the

Grant Parish School Board.

**REVERSED IN PART;**
**AFFIRMED IN PART, AS AMENDED;**
**AND RENDERED.**

SHENAN SMITH PURVIS

VERSUS

GRANT PARISH SCHOOL BOARD, ET AL

**CONERY, J. concurs in part, dissents in part, and assigns written reasons.**

I agree with the majority's ruling denying Defendant's request to supplement the record, but I disagree as to the remainder of the majority's opinion. The trial judge made a reasoned decision based on his direct knowledge of the case and the area of the accident. The trial judge was in the position of directly hearing all of the evidence and made factual findings based upon that evidence and his credibility determinations.

**Law**

Our supreme court, in *Ryan v. Zurich American Insurance. Co.*, 07-2312, p. 7 (La. 7/1/08), 988 So.2d 214, 219, reiterated the standard of review for facts as follows:

> The [factfinder]'s determination of the amount, if any, of an award of damages . . . is a finding of fact. The Civil Code provides that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La. C.C. art. 2324.1.

> The standard of review of a jury's findings is well-settled:

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of

the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Cole v. Allstate Ins. Co.,* 07-1046 (La.App. 3 Cir. 6/05/08), 987 So.2d 310, *writ denied*, 08-1463 (La. 10/31/08), 994 So.2d 535 (citing *Earls v. McDowell*, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242).

"Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error." *Housley v. Cerise*, 579 So.2d 973, 979 (La.1991) (*citing Mart v. Hill,* 505 So.2d 1120 (La.1987)). As this court stated in *Bernard v. Hartford Insurance Co.*, 09-71 (La.App. 3 Cir. 6//3/09), 12 So.3d 1098, 1100-01, *writ denied*, 09-1524 (La. 10/9/09), 18 So.3d 1285 (quoting *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.,* 99-201, p. 6 (La.App. 3 Cir. 10/19/99), 748 So.2d 417, 421):

> It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Lirette v. State Farm Ins. Co.,* 563 So.2d 850, 852 (La.1990); *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989); *Arceneaux v. Domingue,* 365 So.2d 1330, 1333 (La.1978); *Canter v. Koehring Co.,* 283 So.2d 716, 724 (La.1973). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. *Lirette v. State Farm Ins. Co.,*[563 So.2d] at 853; *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106 (La.1990).

The panel in *Bernard,* 12 So.3d at 1102 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989)), further stated:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

**Liability**

The trial judge considered all of the evidence and testimony and rendered thorough written reasons for his rulings on liability and on damages. The trial judge had the first hand opportunity to weigh the credibility of Ms. Purvis and Ms. Lashley. In his reasons for ruling on the issue of liability, the trial judge specifically noted there was "conflicting testimony regarding the moments before the collision." The trial judge found Ms. Purvis contributed to the collision in question, stating, "the plaintiff's vehicle, while not improperly in the middle of the road so as to collide head on with defendant, may have been hugging the center lane just enough so that the left corner of the bus snipped into the left corner of plaintiff's vehicle." The trial judge also stated, "noteworthy is that the plaintiff's car was not knocked completely off the roadway as a result of the impact."

The trial judge's findings are supported by the record. Trooper Hataway, who investigated the accident, testified that the accident happened in a curve on a small, rural, undivided highway where there was little room for vehicles to pass. It is particularly difficult when one vehicle is a bus and the other is hugging the center of the highway. The police report stated there was "no wreck debris" at the scene. Photographs showed the damage to the vehicles was on the corners and discredited Ms. Purvis' version of the facts. These factual findings, especially considering the trial judge's assessment of Ms. Purvis' lack of credibility, support the trial judge's conclusion that Ms. Purvis was 40% at fault.

**Damages**

In his twelve-page ruling on damages, the trial judge gave extensive reasons for the conclusions he reached as to each item of damages. The trial judge

exhaustively reviewed all depositions and medical evidence, citing page numbers and quoting testimony to support his findings.

There was copious evidence of Ms. Purvis' pre-existing conditions. Indeed, there was evidence in the record which showed that *all* of Ms. Purvis' injuries pre-dated the accident except for her sprained ankle. Although her ankle injury was caused by accident at issue, both Ms. Purvis and here treating physician, Dr. Robert Rush, said the injury had completely resolved by August 2005.

Ms. Purvis had an ongoing claim for workers' compensation related to her back and shoulder and was in treatment for her back at the time of the accident. Ms. Purvis had previously undergone a laminectomy with fusion at L-5, S-1, had pelvic screws in her back, and suffered from pre-existing lumbar disk disease.

Ms. Purvis also had previously fallen and broken the metacarpals in her hand, undergone hernia surgery, and suffered from longstanding cervical pain. Pointedly, she had previously suffered a fall in which she injured her *right shoulder* and hand and "was being treated for what she considers a 'lengthy period of time' for chronic pain syndrome." Additionally, intake forms less than one year before the accident showed high blood pressure, sleeplessness, weight gain, morning stiffness, backache, pain and pressure in her chest, nausea, muscle weakness and tenderness, bladder leakage, leg pain and other ailments. Since the time of her prior back surgery, she has been disabled.

The trial judge quoted testimony from Ms. Purvis' treating physician, Dr. Michael Dole, that she was regularly visiting him with complaints of severe pain levels "correlative with childbirth and kidney stones" *up until one week before the accident*. Four months prior to this accident, Dr. Dole said Ms. Purvis reached MMI, her overall prognosis was poor, and she would never return to the workforce

4

in any meaningful way. The medical records show that Ms. Purvis' had pre-existing neck pain and that, pre-accident, she voluntarily discontinued or only sporadically attended physical therapy with two different therapists for her neck.

Dr. David Drez related Ms. Purvis' shoulder pain to the accident. His opinion, however, was based on the history provided by Ms. Purvis in which she *denies* ever having shoulder pain before the accident. Dr. Drez later recanted his opinion after learning of her prior shoulder problems, and he agreed the SLAP tear shoulder lesion could have been the result of her earlier fall.

Johnny Graves, a longtime client of Ms. Purvis' hairdressing business, testified that, prior to this accident, Ms. Purvis complained that her shoulder hurt while she was cutting his hair. He testified that on a few occasions before this accident, Ms. Purvis also told him that she did not feel like cutting his hair because her shoulder hurt her.

The trial judge also cited surveillance evidence demonstrating that, following the accident, Ms. Purvis did not show any limitations on the use of her right arm, hence contradicting her claim of a recent shoulder injury. The trial judge further noted, "Other evidence refutes conclusion as to the source of the [shoulder] injury."

As to her claim of depression, the trial judge noted that Ms. Purvis did not seek a visit with her psychologist for depression related to the accident until *over two years* after the accident occurred.

The trial judge found there was conflicting testimony by Ms. Purvis regarding her income and declined to award lost wages. She filed documents in connection with her worker's compensation claim that gave very different income information than what she presented in this matter.

The trial judge took judicial notice of the fact that Ms. Purvis pled guilty to perjury in the same court in a criminal proceeding prior to this case. The trial judge found:

> This evidence places a cloud of doubt upon Ms. Purvis that permeates every action and assertion that Ms. Purvis has made with respect to her case. It is noted that Ms. Purvis has had an incentive to exaggerate or fabricate facts throughout the time period relevant to this case. This Court takes great caution when considering assertions the plaintiff has made to her physicians and in her deposition related to her injuries.

As to future medicals, the trial judge thoroughly reviewed the extensive evidence that was submitted and again weighed the credibility of the witnesses before reaching his conclusions. The trial judge noted the doctors' testimony was that surgery would be of limited benefit for the SLAP tear in Ms. Purvis' shoulder. The trial judge further cited evidence that Ms. Purvis did not follow through on the physical therapy prescribed for her shoulder and neck from her earlier fall. Citing the testimony of Mr. Graves and the surveillance evidence the trial judge specifically found the SLAP tear shoulder injury pre-dated this accident.

## CONCLUSION

In sum, the written reasons for the trial judge's decisions as to liability and damages are replete with specific citations to the testimony and evidence that support the judge's factual findings. Contrary to the majority view, I find that the trial judge's assessment of credibility is critical to a determination of liability and damages in this case, especially where the facts and the recitations in Ms. Purvis' medical history were in dispute and were found not to be credible by the trial judge. Based in particular on the trial judge's specific findings of the lack of credibility of Ms. Purvis, I believe the trial judge's ruling was not manifestly erroneous and would affirm the trial judge's decision on all issues.