CONERY, J.,
concurs in part, dissents in part, and assigns written reasons.
|,I agree with the majority’s ruling denying Defendant’s request to supplement the record, but I disagree as to the remainder of the majority’s opinion. The trial judge made a reasoned decision based on his direct knowledge of the case and the area of the accident. The trial judge was in the position of directly hearing all of the evidence and made factual findings based upon that evidence and his credibility determinations.
Law
Our supreme court, in Ryan v. Zurich American Insurance. Co., 07-2312, p. 7 (La.7/1/08), 988 So.2d 214, 219, reiterated the standard of review for facts as follows:
The [factfinderj’s determination of the amount, if any, of an award of damages .... is a finding of fact. The Civil Code provides that “[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” La. C.C. art. 2324.1.
The standard of review of a jury’s findings is well-settled:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Our supreme court set forth a two-part test for the reversal of a factfinder’s determinations:
*693 (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of |Pthe trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Cole v. Allstate Ins. Co., 07-1046 (La.App. 3 Cir. 6/05/08), 987 So.2d 310, writ denied, 08-1463 (La.10/31/08), 994 So.2d 535 (citing Earls v. McDowell, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242).
“Whether an accident caused a person’s injuries is a question of fact which should not be reversed on appeal absent manifest error.” Housley v. Cerise, 579 So.2d 973, 979 (La.1991) (citing Mart v. Hill, 505 So.2d 1120 (La.1987)). As this court stated in Bernard v. Hartford Insurance Co., 09-71 (La.App. 3 Cir. 6/3/09), 12 So.3d 1098, 1100-01, writ denied, 09-1524 (La.10/9/09), 18 So.3d 1285 (quoting Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc., 99-201, p. 6 (La.App. 3 Cir. 10/19/99), 748 So.2d 417, 421):
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., [563 So.2d] at 853; Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990).
The panel in Bernard, 12 So.3d at 1102 (quoting Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)), further stated:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
| (¡Liability
The trial judge considered all of the evidence and testimony and rendered thorough written reasons for his rulings on liability and on damages. The trial judge had the first hand opportunity to weigh the credibility of Ms. Purvis and Ms. Lash-ley. In his reasons for ruling on the issue of liability, the trial judge specifically noted there was “conflicting testimony regarding the moments before the collision.” The trial judge found Ms. Purvis contributed to the collision in question, stating, “the plaintiffs vehicle, while not improperly in the middle of the road so as to collide head on with defendant, may have been hugging the center lane just enough so that the left corner of the bus snipped into the left corner of plaintiffs vehicle.” The trial judge also stated, “noteworthy is that the plaintiffs car was not knocked completely off the roadway as a result of the impact.”
The trial judge’s findings are supported by the record. Trooper Hataway, who investigated the accident, testified that the accident happened in a curve on a small, rural, undivided highway where there was little room for vehicles to pass. It is par *694 ticularly difficult when one vehicle is a bus and the other is hugging the center of the highway. The police report stated there was “no wreck debris” at the scene. Photographs showed the damage to the vehicles was on the corners and discredited Ms. Purvis’ version of the facts. These factual findings, especially considering the trial judge’s assessment of Ms. Purvis’ lack of credibility, support the trial judge’s conclusion that Ms. Purvis was 40% at fault. Damages
In his twelve-page ruling on damages, the trial judge gave extensive reasons for the conclusions he reached as to each item of damages. The trial judge 1¿exhaustively reviewed all depositions and medical evidence, citing page numbers and quoting testimony to support his findings.
There was copious evidence of Ms. Pur-vis’ pre-existing conditions. Indeed, there was evidence in the record which showed that all of Ms. Purvis’ injuries pre-dated the accident except for her sprained ankle. Although her ankle injury was caused by accident at issue, both Ms. Purvis and here treating physician, Dr. Robert Rush, said the injury had completely resolved by August 2005.
Ms. Purvis had an ongoing claim for workers’ compensation related to her back and shoulder and was in treatment for her back at the time of the accident. Ms. Purvis had previously undergone a lami-nectomy with fusion at L-5, S-l, had pelvic screws in her back, and suffered from pre-existing lumbar disk disease.
Ms. Purvis also had previously fallen and broken the metacarpals in her hand, undergone hernia surgery, and suffered from longstanding cervical pain. Pointedly, she had previously suffered a fall in which she injured her right shoulder and hand and “was being treated for what she considers a ‘lengthy period of time’ for chronic pain syndrome.” Additionally, intake forms less than one year before the accident showed high blood pressure, sleeplessness, weight gain, morning stiffness, backache, pain and pressure in her chest, nausea, muscle weakness and tenderness, bladder leakage, leg pain and other ailments. Since the time of her prior back surgery, she has been, disabled.
The trial judge quoted testimony from Ms. Purvis’ treating physician, Dr. Michael Dole, that she was regularly visiting him with complaints of severe pain levels “correlative with childbirth and kidney stones” up until one week before the accident. Four months prior to this accident, Dr. Dole said Ms. Purvis reached MMI, her overall prognosis was poor, and she would never return to the workforce |fiin any meaningful way. The medical records show that Ms. Purvis’ had pre-existing neck pain and that, pre-accident, she voluntarily discontinued or only sporadically attended physical therapy with two different therapists for her neck.
Dr. David Drez related Ms. Purvis’ shoulder pain to the accident. His opinion, however, was based on the history provided by Ms. Purvis in which she denies ever having shoulder pain before the accident. Dr. Drez later recanted his opinion after learning of her prior shoulder problems, and he agreed the SLAP tear shoulder lesion could have been the result of her earlier fall.
Johnny Graves, a longtime client of Ms. Purvis’ hairdressing business, testified that, prior to this accident, Ms. Purvis complained that her shoulder hurt while she was cutting his hair. He testified that on a few occasions before this accident, Ms. Purvis also told him that she did not feel like cutting his hair because her shoulder hurt her.
The trial judge also cited surveillance evidence demonstrating that, following the *695 accident, Ms. Purvis did not show any limitations on the use of her right arm, hence contradicting her claim of a recent shoulder injury. The trial judge further noted, “Other evidence refutes conclusion as to the source of the [shoulder] injury.”
As to her claim of depression, the trial judge noted that Ms. Purvis did hot seek a visit with her psychologist for depression related to the accident until over two years after the accident occurred.
The trial judge found there was conflicting testimony by'Ms. Purvis regarding her income and declined to award lost wages. She filed documents in connection with her worker’s compensation claim that gave very different income information than what she presented in this matter.
UThe trial judge took judicial notice of the fact that Ms. Purvis pled guilty to perjury in the same court in a criminal proceeding prior to this case. The trial judge found:
This evidence places a cloud of doubt upon Ms. Purvis that permeates every action and assertion that Ms. Purvis has made with respect to her case. It is noted that Ms. Purvis has had an incentive to exaggerate or fabricate facts throughout the time period relevant to this case. This Court takes great caution when considering assertions the plaintiff has made to her physicians and in her deposition related to her injuries.
As to future medicals, the trial judge thoroughly reviewed the extensive evidence that was submitted and again weighed the credibility of the witnesses before reaching his conclusions. The trial judge noted the doctors’ testimony • was that surgery would b'e of limited benefit for the SLAP tear in Ms. Purvis’ shoulder. The trial judge further cited evidence that Ms. Purvis did not follow through on the physical therapy prescribed for her shoulder and neck from her earlier fall. Citing the testimony of Mr. Graves and the surveillance evidence the trial judge specifically found the SLAP tear shoulder injury pre-dated this accident.
CONCLUSION
In sum, the written reasons for the trial judge’s decisions as .to liability and damages are replete with specific citations to the testimony and evidence that support the judge’s factual findings. Contrary to the majority view, I find that the trial judge’s assessment of credibility is critical to a determination of liability and damages in this case, especially where the facts and the recitations in Ms. Purvis’ medical history were in dispute and were found not to be credible by the trial judge. Based in particular on the trial judge’s specific findings of the lack of credibility of Ms. Purvis, I believe the trial judge’s ruling was not manifestly erroneous and would affirm the trial judge’s decision on all issues.